COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Elder and Kelsey
Argued at Salem, Virginia


LEONARD MONROE SMITH, JR.

v.        Record No. 2403-03-3

TONYA FENN YOUNG SMITH

OPINION BY
JUDGE D. ARTHUR KELSEY
JUNE 8, 2004

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
James R. Swanson, Judge

Neil E. McNally (Thomas N. Key; Key, Tatel & McNally, P.C., on
brief), for appellant.

Ellen S. Weinman for appellee.


In this equitable distribution case, Leonard Monroe Smith, Jr. argues that the trial court

(a) erroneously failed to award him a 50% interest in the marital home, (b) disregarded a

prenuptial agreement when distributing personalty acquired during the marriage, and (c) abused

its discretion by ordering him to pay wife $2,500 in attorney's fees.  We agree that the court

erred in refusing to enforce the prenuptial agreement, but find no fault with the court's

distribution of the marital home or award of fees.  We thus reverse in part, affirm in part, and

remand for the court to reconsider its allocation of the personalty consistent with the prenuptial

agreement.

I.

"When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  Shortly before their

marriage in 1997, Leonard and Tonya Smith entered into a prenuptial agreement. On the issue of property acquired during the marriage, the agreement provides:

> Future Property: Except as otherwise set forth in this agreement, *all property — real, personal and mixed — which each party may hereafter acquire in his or her own name or possession shall remain the separate property of that person*, along with all future appreciation, increases and other changes in value of that property and irrespective of any contributions either party may make to the property of the marriage, directly or indirectly.

(Emphasis added). Wife's attorney drafted the agreement, and both parties signed it.

During their marriage, the Smiths maintained separate checking accounts and two separate credit card accounts. They each purchased various items of personal property and scrupulously retained receipts for each purchase. Their parents contributed equal sums for the couple to build and furnish a new home. A post-separation appraisal, paid for by husband's mother, Betty Smith, valued the home at $183,000. The parties lived together in the home until November 2, 2001, when wife moved out. A few days later, wife filed a bill of complaint for divorce alleging adultery and constructive desertion. Husband counterclaimed, alleging actual desertion.

In the trial court, the parties agreed to resolve their dispute over ownership of the marital home by means of a judicial auction. Under their agreed protocol, each party would make bids for the home in $1,000 increments in an amount that party would pay the other for his or her equity interest. Husband won the auction, agreeing to pay wife $84,000. The trial court's decree required husband to refinance the home and pay off the existing mortgage. In reliance on this agreement, wife incurred moving and storage expenses.

Husband, however, failed either to pay wife or to refinance the home. When challenged on this, husband assured the trial court that he could obtain financing and that, in fact, he had already submitted loan applications to four banks. He agreed to give wife copies of these

applications after the hearing. He never did. Nor did he ever refinance the property or pay wife the $84,000 auction price.

With regard to their personal property, both parties filed copies of the prenuptial agreement with the trial court. The court heard extensive *ore tenus* testimony regarding various items of personal property acquired during the marriage. Going item by item down a five-page list of property that husband declared to be his separate property, each party produced receipts or testified regarding the separate or marital nature of each item. Neither party challenged the validity of the prenuptial agreement or any of its provisions. During cross-examination, wife concurred that "the prenuptial agreement that everybody concedes is valid" was in fact "prepared by [her] lawyer." The trial judge clarified wife's understanding of the "future property" portion of the prenuptial agreement:

> Q: I don't know. I'm asking you what this means, because you seem in your testimony to have taken the position that if you paid for the property, even if it was acquired during the marriage, that under this provision it means it's your property. It's your separate property.
>
> A: Correct.
>
> Q: And is that the way you interpret this?
>
> A: Yes.

Husband understood the prenuptial agreement to mean the same thing:

> Q: Did I understand your position is if you pay for it, if it came with a check out of your checking account, it's yours?
>
> A: Right.

Neither party argued that the prenuptial agreement should be declared void for indefiniteness or set aside as insufficient to overcome the presumption of marital property under Code § 20-107.3.

In a final decree entered in August 2003, the trial court awarded a no-fault divorce to wife. The court awarded the marital home to wife, but ordered her to pay husband $26,250, an

amount "representing 35% of the equity in the property." The court valued the home at $183,000 and determined the mortgage indebtedness to be $108,000. The court also found that the stove, refrigerator and a dining room chandelier should be "deemed part of, and included with, the marital residence."[1]

When distributing the personalty, the court disregarded the prenuptial agreement altogether on the ground that it was "less than clear" and "imprecise and conflicting." The court characterized the parties' consensus interpretation of the agreement as a "whoever paid for it" basis for separate ownership. That interpretation, the court held, conflicted with the "in possession" language of the agreement. As a result, the court reasoned, the agreement did not overcome the marital property presumption of Code § 20-107.3. Having found the agreement ineffectual, the court held that all items of personal property would be "hereby deemed marital property" and divided among the parties pursuant to the discretionary factors of Code § 20-107.3(E).

Finally, the trial court found husband in contempt for his "deliberate misrepresentations to the Court" and his "willful failure to abide by the orders of this Court." Characterizing husband's conduct during the litigation as "obstructive and in bad faith," the court ordered him to pay wife $2,500 towards wife's attorney's fees and costs.

II.

On appeal, husband argues that the trial court (a) abused its discretion in failing to award him 50% of the equity in the home, (b) erroneously found the prenuptial agreement too indefinite to be enforced, and (c) awarded "excessive" attorney's fees to wife.

---

[1] The record reflects that husband classified the stove and refrigerator as marital property in his answer to interrogatories.

(a) *Distribution of the Marital Home*

Husband's first argument — that the trial court erred in awarding the marital home to wife and making her pay him 35% of its equity value — has no merit. Husband made an in-court stipulation to submit the home to a judicial auction. At that auction, husband bought the property and agreed to pay wife $84,000. Husband defaulted on his agreement, leaving the trial court with a broad range of options to cure the default. The trial court chose to relieve husband of his contractual obligation and to order that wife pay him $26,500 (35% of the home's $75,000 equity). The net effect of the court's decision was to improve husband's financial position from what it would have been had he complied with the contractual duties he assumed under the judicial auction. The trial court's decision, therefore, was considerably more equitable to husband than he had a right to expect.

That so, we cannot perceive any principled legal basis for husband's assertion that this benefit prejudiced his rights under the equitable distribution statute. See generally Code § 20-107.3(E)(7) (authorizing court to consider "debts and liabilities" of each spouse); Code § 20-107.3(E)(10) (permitting consideration of any additional "necessary or appropriate" factors to determine a "fair and equitable" award). "A decision involving the equitable distribution of marital property 'rests within the sound discretion of the trial court,' and can be overturned only by a showing of an abuse of that discretion." Owens v. Owens, 41 Va. App. 844, 853, 589 S.E.2d 488, 493 (2003) (citing Mir v. Mir, 39 Va. App. 119, 125, 571 S.E.2d 299, 302 (2002)) (citation omitted). No such showing has been made on this issue.

(b) *Enforcement of the Prenuptial Agreement*

Husband next contends that the trial court erred by refusing to enforce the prenuptial agreement when distributing the personal property of the parties. We agree.

The law presumes property acquired during a marriage to be marital, not separate, property. See Code § 20-107.3(A)(2). The parties, however, may defeat that presumption by agreement. See Code § 20-107.3(I); see also Code § 20-151(A). Contracts seeking to do this before marriage, like the prenuptial agreement in this case, should be interpreted and enforced no differently than any other type of contract. See King v. King, 40 Va. App. 200, 206, 578 S.E.2d 806, 809 (2003); Rogers v. Yourshaw, 18 Va. App. 816, 819, 448 S.E.2d 884, 886 (1994); Drewry v. Drewry, 8 Va. App. 460, 466, 383 S.E.2d 12, 14 (1989). Thus, we employ "rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002); King, 40 Va. App. at 206, 578 S.E.2d at 809.

Under settled contract principles, Virginia courts resolve contractual vagaries in one of three ways. First, if no patent or latent ambiguities exist, a court should enforce the plain meaning of the contractual language without resort to extrinsic evidence. See Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 632, 561 S.E.2d 663, 667 (2002); King, 40 Va. App. at 206, 578 S.E.2d at 810. Second, if an ambiguity exists, a court should still enforce the contract if the real meaning of the ambiguous provision can be discerned from extrinsic evidence. See Cascades N. Venture Ltd. P'ship v. PRC Inc., 249 Va. 574, 579, 457 S.E.2d 370, 373 (1995). Third, if an ambiguity renders the alleged agreement too indefinite — even after the consideration of extrinsic evidence — for the court to determine the parties' intent, the contract cannot be enforced due to the absence of any discernable meeting of the minds. See, e.g., Allen v. Aetna Casualty & Surety, 222 Va. 361, 364, 281 S.E.2d 818, 820 (1981).

In this case, the trial court set the prenuptial agreement aside on the ground it was "less than clear" and used "imprecise and conflicting language." This finding, even if it were true, falls far short of the threshold standard for invalidating a contract for inscrutability. "The law

does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency." Reid v. Boyle, 259 Va. 356, 367-68, 527 S.E.2d 137, 143 (2000) (citations omitted). "While courts cannot make contracts for the parties, neither will they permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in the light of all the surrounding circumstances." Id.; see also City of Manassas v. Bd. of Supervisors, 250 Va. 126, 134, 458 S.E.2d 568, 572 (1995); High Knob, Inc. v. Allen, 205 Va. 503, 507-08, 138 S.E.2d 49, 53 (1964). Indefiniteness "must reach the point where construction becomes futile" for a court to declare the contract "meaningless" and to "justify the conclusion that in reality it accomplished nothing." Heyman Cohen & Sons, Inc. v. M. Lurie Woolen Co., 133 N.E. 370, 371 (N.Y. 1921) (Cardozo, J.). Such a conclusion should be "at best a last resort." Id.; see generally 1 Corbin, Contracts § 4.1 (revised ed. 2003).

We see no ambiguity in the "Future Property" provision of the prenuptial agreement.[2] Neither did either of the parties when they presented their case to the trial court. Neither party argued that the contract included any latent or patent ambiguity — much less one so fatal as to dispossess the agreement of its contractual status. Nor did either party argue that the contract failed to rebut the marital property presumption.[3] The trial court reached that erroneous conclusion *sua sponte*.

---

[2] Absent the necessity to consider extrinsic evidence, appellate courts review trial court interpretations of contractual texts *de novo* because we "have an equal opportunity to consider the words within the four corners of the disputed provision." Standard Banner Coal Corp. v. Rapoca Energy Co., 265 Va. 320, 324-25, 576 S.E.2d 435, 437 (2003) (citations omitted); see also Shepherd v. Davis, 265 Va. 108, 117, 574 S.E.2d 514, 519 (2003).

[3] The trial court acknowledged in its letter opinion that "both parties have taken the position that their Prenuptial Agreement, dated May 22, 1997, controlled the division of personal property . . . ." At no time in the trial court did either party argue that the agreement was unenforceable.

The prenuptial agreement states that "all property — real, personal and mixed — which each party may hereafter acquire in his or her own name or possession shall remain the separate property" of the acquiring party. Both parties agreed on what that provision meant: If one party *acquired* an item, it belonged to that party. With this understanding, they presented evidence of who bought what. The trial court rejected this evidence, reasoning that it "ignores altogether the 'in possession' language contained in the agreement." We fail to see why. The prepositional phrase "in his or her own name or possession" modifies the verb "acquire." This provision thus focuses on the act of *acquiring* the property, not the act of later *maintaining* it. Acquisition can occur either by the acquirer receiving a document of title (as with realty and motor vehicles) or by receiving possession of the item at the time of purchase. In either instance, the phrase "in his or her own name or possession" merely describes how a person may "acquire" property.

In this case, the parties maintained separate checking accounts and two separate credit card accounts. They acquired most of their personalty through retail purchases and took possession at the time of the purchase. Because the act of acquisition was usually accompanied by the payment of a purchase price, they understandably focused on this aspect. As husband explained, "if you pay for it, if it came with a check out of your checking account, it's yours." Wife agreed that "if you paid for the property, even if it was acquired during the marriage, that under this provision it means it's your property. It's your separate property." That either party may have thereafter used, borrowed, or otherwise temporarily possessed any particular item (which had been previously acquired by the other party) did not change its character as separate property under the prenuptial agreement.[4]

---

[4] Even if the provision were ambiguous, the parties' shared interpretation, while not binding on the court, has considerable weight. See Galloway Corp. v. S.B. Ballard Constr. Co., 250 Va. 493, 503, 464 S.E.2d 349, 355 (1995) ("If the parties both manifested the same intent with respect to the ambiguity, that intent will be enforced.").

The trial court, therefore, erred in concluding that the prenuptial agreement should be set aside as unenforceable because it was "less than clear" and used "imprecise and conflicting language." On remand, the court should reconsider the evidence previously presented, take whatever additional evidence it deems prudent, and distribute the contested items of personal property consistent with the prenuptial agreement.[5]

(c) *Award of Attorney's Fees to Wife*

Finally, husband claims the trial court erred by awarding wife $2,500 in attorney's fees. Whether to award attorney's fees "is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion." Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002)); see also Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on 'reasonableness under all the circumstances.'" Kane, 41 Va. App. at 375, 571 S.E.2d at 354 (quoting Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001)).

We agree with the trial court's assessment of the "relative equities of the parties in this case" and its conclusion that husband's obstructive conduct compounded the costs of this litigation. The award of fees seems to us particularly appropriate given the effort required to

---

[5] The trial court should also reconsider its 50/50 apportionment of credit card debt to the extent necessary to be consistent with its post-remand distribution of separate items of personal property. Any third-party debt incurred by a spouse in the purchase of separate property should likewise be classified as separate debt outside the scope of equitable distribution. See generally Stumbo v. Stumbo, 20 Va. App. 685, 692-93, 460 S.E.2d 591, 595 (1995) ("Thus, when property is acquired, and, similarly, when debt is incurred, a trial court must determine the purpose of expenditure in order to classify property as marital or separate or to 'allocate' debt as marital or separate."); cf. Hayes v. Hayes, 21 Va. App. 515, 518, 465 S.E.2d 590, 592 (1996) ("The first paragraph of subsection E states that it is limited to the apportionment of marital debt.").

litigate the issue of the marital home after husband breached his auction agreement and, in the midst of doing so, misrepresented his refinancing efforts to the trial court. For these reasons, we find no basis for husband's claim that the trial court abused its discretion in awarding fees.

III.

In sum, we affirm the trial court's decisions regarding the marital residence and attorney's fees. We reverse the trial court's refusal to enforce the prenuptial agreement and remand with instructions to reconsider its allocation of personal property pursuant to that agreement.[6]

Affirmed in part,<br>
reversed in part,<br>
and remanded.

---

[6] We deny wife's request for attorney's fees on appeal given husband's position as prevailing party on the prenuptial agreement issue. See generally Petry v. Petry, 41 Va. App. 782, 796 n.7, 589 S.E.2d 458, 465 n.7 (2003) (citing O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996)).