COURT OF APPEALS OF VIRGINIA

Present:   Judges Clements, Kelsey and Senior Judge Annunziata
Argued at Alexandria, Virginia


MICHAEL K. HARDEY

MEMORANDUM OPINION[*] BY
v.        Record No. 2628-07-4        JUDGE D. ARTHUR KELSEY
                                       AUGUST 26, 2008
ELIZABETH METZGER


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas A. Fortkort, Judge Designate

Patricia E. Tichenor (Anne M. Heishman; Law Office of Patricia
E. Tichenor, P.L.L.C.; Heishman Law, on briefs), for appellant.

Daniel J. Travostino (Daniel J. Travostino, P.C., on brief), for
appellee.


Michael K. Hardey appeals a final divorce decree on several grounds. He claims the trial

court erroneously enforced a property settlement agreement procured as a result of extortion and

extrinsic fraud. Hardey also contends the court erred by not holding his wife, Elizabeth Metzger,

in contempt of court for fraudulent non-disclosure of assets. Finally, Hardey argues the court

mistakenly calculated and awarded attorney fees to Metzger. Raising an additional question

presented, Metzger asserts that the court erred in calculating an award of prejudgment interest.

We hold the trial court did not err as Hardey contends and, thus, affirm the final decree as

it concerns the property settlement agreement, the contempt of court request, and the award of

attorney fees. We agree with Metzger, however, that the trial court erred in its calculation of

prejudgment interest. We remand that aspect of the case for the trial court to correct that minor

discrepancy in its ruling.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

Under settled principles, when reviewing a trial court's decision on appeal, "we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Smith v. Smith, 43 Va. App. 279, 282, 597 S.E.2d 250, 252 (2004) (quoting Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (citations omitted)). "That principle requires us to discard the evidence of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial." Petry v. Petry, 41 Va. App. 782, 786, 589 S.E.2d 458, 460 (2003) (citation omitted).

Hardey and Metzger married in 1977 and raised six children together. During the marriage, Hardey operated several businesses. In 1999, Hardey asked his wife to allow him to pledge property titled solely in her name as collateral for a $200,000 business loan. When Metzger refused, Hardey forged her name on a non-recourse guaranty loan and a deed of trust against the property titled solely in Metzger's name. Metzger first learned of the debt (as well as the forgery) about a year later when the lender sent her a foreclosure notice.

After separating, Metzger and Hardey each retained legal counsel to negotiate a property settlement agreement. Among other topics, the negotiations addressed the $200,000 debt. Metzger's counsel wrote an e-mail to Hardey's counsel demanding that Hardey pay the debt directly and obtain a release of the lender's lien against the property. If he failed to do so, Metzger's counsel noted, she would have no choice but to initiate civil proceedings to vacate the fraudulently obtained lien. In a separate e-mail sent by Metzger directly to Hardey, she advised her husband that she would "send [him] to jail" if he did not discharge the debt against her and obtain a release of the lien against her property. A few weeks later, counsel prepared and the parties signed a property settlement agreement in October 2000. The agreement divided the marital property, settled spousal and child support issues, and, with respect to the $200,000 debt,

required Hardey to "cause the lien to be released" and Metzger to be "absolved, indemnified and held harmless" from all liability within eighteen months. At the same time, Metzger and Hardey both signed loan documents reaffirming the debt and extending its due date. Metzger did this, she testified, to "give him time to go ahead and pay off" the debt in full.

After the parties signed the agreement, Metzger filed for divorce. Hardey waived service of process and notice of any further proceedings. As the agreement expressly contemplated, Metzger submitted it to the court for affirmance by, and incorporation into, the final divorce decree. In 2002, the trial court entered the final decree (signed by Hardey "Seen and Agreed") dividing the marital estate pursuant to the property settlement agreement. Because neither party appealed, the decree became final after the expiration of Rule 1:1's twenty-one-day period.

Hardey did not pay off the loan as he promised to do. Nor did he obtain a release of the securing lien against the property. Fearing she would lose the property to foreclosure, Metzger negotiated a $150,000 payoff with the lender and eventually paid the balance owed in September 2002. She did so by obtaining another loan at a 6% interest rate. From September 2002 to December 2003, Hardey made monthly payments on Metzger's new loan.

In 2003, Metzger filed a show-cause petition requesting higher spousal support pursuant to an escalation clause in the property settlement agreement triggered by Hardey's default on the indemnification clause. Hardey responded by declaring bankruptcy, thereby discharging the higher support obligation. The federal bankruptcy court, however, held that Hardey's indemnification liability could not be discharged and left "any determination of damages to appropriate state court proceedings."

In 2006, Metzger filed a show-cause petition seeking a contempt finding against Hardey for, among other things, failing to indemnify her from the original $200,000 debt. Hardey defended himself on various grounds, including the assertion that the property settlement

agreement was "void" because of "financial and emotional duress" caused by Metzger's extortionary threats to expose him to criminal prosecution. See Hardey Answer & Cross Bill ¶¶ 1-2, 6, 15. Metzger also requested an award of attorney fees based upon a provision of the agreement imposing upon Hardey liability for "any and all legal fees incurred by Wife" in the event he defaulted on his contractual indemnification obligations.

In addition, Hardey filed a show-cause petition against Metzger claiming that she had fraudulently failed to disclose assets during the negotiations leading up to the property settlement agreement and thereby triggered a clause of the agreement providing for either contractual rescission or a partial monetary award in the event of a later finding of non-disclosure fraud.

Prior to the evidentiary hearing, the trial court dismissed Hardey's show-cause petition alleging non-disclosure fraud on the ground that no court order existed at the time the fraud allegedly occurred (more than a year prior to the final decree) and, thus, the remedy of contempt of court did not apply. The court added that the claim involved an allegation of intrinsic, not extrinsic, fraud. As a result, Hardey should have raised this claim prior to the divorce decree becoming final and unappealable. On the extortion issue, the court denied Metzger's pretrial motion to dismiss Hardey's show-cause petition. Hardey should have "the opportunity to develop the facts at trial," the court ruled.[1]

At the start of the three-day trial, Hardey framed his extortion case with the allegation that Hardy felt "powerless to protect his interests" in response to his wife's alleged extortion and, "as a result of those threats," he entered in to a one-sided property settlement agreement. On several occasions throughout the trial, Hardey's counsel repeated this assertion.[2] As his counsel

---

[1] Judge Burke F. McCahill issued these pretrial rulings. Judge Thomas A. Fortkort presided over the evidentiary hearing and issued the final order in this case.

[2] The extortion claim, Hardey's counsel explained at trial, required "not only" proof of an extortionary threat, "but also" proof that the party making the threat received benefits "in exchange for that threat." J.A. 366; see also id. at 383 ("got a benefit from that threat"), 426 ("in

- 4 -

predicted, Hardey testified that his wife's threats (claiming oral threats in addition to the e-mail) induced him to sign the lopsided agreement that unjustly enriched his wife.

Metzger pursued at trial her claim for compensation for Hardey's default on the indemnification provision of the agreement. Metzger sought $112,617 for the loan payoff plus 6% prejudgment interest, a calculation which she alleged took into account Hardey's monthly payments from September 2002 until December 2003. Hardey raised various defenses in addition to his extortion claim. Among other things, he argued Metzger voluntarily took on the obligation to renegotiate the original defaulted loan and gave him an inadequate opportunity to resolve the problem.

Even though the court had previously dismissed Hardey's contempt petition, the parties offered testimony and exhibits on the nondisclosure issue. Denying any desire to litigate "the nondisclosure case," J.A. 1016, Hardey's counsel opened the door to this evidence by asserting it was relevant to determining the assets Metzger retained as a result of the property settlement agreement. Id. at 645, 647-48. Metzger's counsel argued the evidence was relevant to Hardey's credibility as a witness and also to her claim for attorney fees.

On the second day of trial, Hardey's counsel specifically objected to any of the evidence being used to "litigate the non-disclosure issue." Id. at 838. The court overruled the objection without comment. Hardey's counsel later raised the same objection. Metzger's counsel responded that Hardey's counsel had opened the door by bringing the matter up during direct examination of Hardey. The court agreed, "That's correct. You may examine." Id. at 856. Hardey later presented expert testimony addressing the value of the disclosed and allegedly

---

exchange for that threat"), 691 ("the result of extortion"), 696 ("but for the threat"), 760 ("because of this extortion"). Hardey's counsel repeated this assertion in her written closing argument. "For extortion, Hardey must simply prove that Metzger obtained a monetary benefit *as a result of* her threats." Id. at 2532 (emphasis added).

non-disclosed assets. In closing arguments, Metzger's counsel made a proffer of proof on the subject in support of his client's position that "there are no hidden assets or bank assets or other sources of income that she hasn't disclosed or that haven't shown up on her tax returns." Id. at 2432-33. Hardey's counsel initially objected to the proffer, but withdrew the objection and made a counter proffer on the same point. Id. at 2433, 2458-59.

At trial, Metzger sought an award of attorney fees. The court admitted various fee invoices offered by Metzger in support of that claim. Hardey's counsel objected to the invoices covering fees between November 2006 (the last invoice provided in discovery) and June 2007 (the trial) because they had not been disclosed in discovery. The court admitted the invoices anyway, apparently finding Hardey insufficiently prejudiced by the untimely disclosure. Hardey also presented evidence that, prior to trial, his counsel made six offers of settlement to avoid the cost of trying the case. The court overruled Metzger's objection to testimony about "settlement discussions" generally, id. at 832, but sustained her objection to testimony concerning the specific terms of the offers.

After hearing the evidence at trial, the court began its ruling by rejecting categorically Hardey's non-disclosure allegations. "I don't find that at the time of the property settlement agreement that Ms. Metzger had hidden any assets from her husband," the court found. On the extortion issue, the court noted that Hardey was "required to prove by clear and convincing evidence, a high standard, perhaps the highest civil standard available to the Court, that Ms. Metger's threat induced him to enter into this agreement." The court then found the facts fell short of proving this allegation. Rather than being coerced into the agreement through extortion, the court found, Hardey freely entered into the agreement because "he received a benefit, a very large benefit, when Ms. Metzger affirmed the debt."

The court also held Hardey had violated his duty to indemnify Metzger from the $200,000 debt as required by the property settlement agreement. The court ordered prejudgment interest to run on Metzger's reimbursement claim "from the date that she filed this suit." Metzger objected to this ruling, arguing that the interest should run from the date she incurred the loss not the date she filed suit. The court overruled the objection, as well as a battery of other requests for reconsideration, and entered final judgment.

II.

On appeal, Hardey challenges the trial court's rulings on several levels. We believe these arguments boil down to three. Hardey claims the court erroneously

- enforced a property settlement agreement obtained as a result of extortion, a claim he characterizes as extrinsic fraud;

- dismissed prior to trial his show-cause petition seeking to hold Metzger in contempt of court for non-disclosure fraud; and

- awarded attorney fees to Metzger relying upon fee invoices not disclosed during discovery and without considering the specific settlement discussions prior to trial.

Raising an additional question presented, Metzger asserts that the court erred in calculating an award of prejudgment interest on her indemnification claim.

A. EXTORTION AND THE PROPERTY SETTLEMENT AGREEMENT

On this issue, Hardey argues that the property settlement agreement should be declared void *ab initio* as a matter of law — rendering it, as well as the final divorce decree, subject to collateral attack. Much of the briefing on appeal addresses whether extortion, when proved, should be characterized as intrinsic fraud (rendering the contract voidable, but not subject to collateral attack) or extrinsic fraud (rendering the contract void and subject to attack at any time).

The debate, however, is entirely academic in this case. The trial court held that Hardey was "required to prove by clear and convincing evidence . . . that Ms. Metzger's threat *induced him to enter into this agreement*." J.A. 2502 (emphasis added). Hardey's opening and reply

- 7 -

briefs do not claim the trial court erred in holding that proof of inducement must be presented to render a contract either void or voidable on grounds of extortion. Nor did he raise this argument in the trial court.

To be sure, Hardey specifically acknowledged at trial that he had to prove contractual causation. Id. at 366, 383, 426, 691, 696, 760, 2532. Though the leading authorities similarly accept this proposition,[3] it is a matter of first impression under Virginia law that we need not rule upon to decide the case. Hardey has repeatedly waived appellate review of this issue: first by failing to raise the question at trial, see Rule 5A:18; then by making the opposite assertion to the trial court, see Rahnema v. Rahnema, 47 Va. App. 645, 663, 626 S.E.2d 448, 457 (2006) ("Having taken this position with the trial judge, [appellant] cannot take an opposite position with us on appeal."); again by not specifically addressing it to us in any question presented, see Klein v. Klein, 49 Va. App. 478, 481, 642 S.E.2d 313, 315 (2007) ("Husband's argument as to the incorrect standard was not included in husband's questions presented; thus, we will not consider it on appeal."); and, finally, by implicitly acknowledging the causation requirement in his opening brief, see Appellant's Opening Br. at 29 ("It is clear that Hardey only signed this one-sided Agreement *as a result of* his wife's extortion." (emphasis added)).[4]

---

[3] The Restatement (Second) of Contract § 176(1)(b) identifies extortion as a type of improper threat governed by duress and undue influence principles. "The essence of the type of duress dealt with in this Section is inducement by an improper threat." Restatement (Second) of Contract § 175 cmt. a (1981). "It is important to emphasize the requirement that the threat *cause* or *induce* a manifestation of assent by the recipient. Causation must be a fact question requiring an analysis of all of the surrounding circumstances to determine whether the threat, in fact, induced or caused apparent assent." 1 Murray on Contracts § 93, at 531-32 (4th ed. 2001) (emphasis in original); see also 1 Farnsworth on Contracts § 4.16, at 502 & § 4.17, at 505 (3d ed. 2004) ("[T]he threat must induce the victim's manifestation of assent. . . . A threat to instigate criminal prosecution has generally been regarded as an improper means of inducing the victim of the threat to make a contract."); 7 Corbin on Contracts § 28.4, at 49 (2002) (observing that the "threat" must be "capable of inducing a settlement against the free will" of the other party).

[4] Hardey attempts to raise this point for the first time in a supplemental brief lodged after appellate oral argument. We grant Hardey leave to file the brief, but consider the arguments

Applying this causation standard, the trial court found Hardey failed to prove his case. Under the court's view of the evidence, Hardey would have entered into the agreement notwithstanding Metzger's threat because "he received a benefit, a very large benefit, when Ms. Metzger affirmed the debt." J.A. 2502-03. No proof established, the court reasoned, that *but for* Metzger's threat Hardey would have not made the deal. In this ruling, the court squarely rejected Hardey's testimony on the stand as well as his counsel's repeated arguments that the evidence satisfied the requirement that Metzger obtained the benefits of the agreement "*as a result of* her threats." Id. at 2532 (emphasis added).

Because the trial court, sitting as factfinder, held that Hardey did not prove the alleged extortion induced him to enter into the property settlement agreement — a requirement incontestable on appeal — we review its findings of fact with great deference. "Under Code § 8.01-680, a factual determination cannot be reversed on appeal unless 'plainly wrong or without evidence to support it.'" Congdon, 40 Va. App. at 261, 578 S.E.2d at 836 (citations omitted). Thus, "if 'the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court.'" Id. at 266, 578 S.E.2d at 838 (citation omitted).

Given the evidence presented in this case, we cannot say the trial court was plainly wrong or that its conclusion has no evidence to support it. Having heard extensive testimony from Hardey and Metzger on this issue, the trial court was in a far superior position to discern such

---

made therein to be waived. See Epps v. Commonwealth, 47 Va. App. 687, 716 n.8, 626 S.E.2d 912, 925 n.8 (2006) (holding that issues not raised in the questions presented or addressed in the appellant's opening brief cannot be raised for the first time in the appellant's reply brief), aff'd on other grounds, 273 Va. 410, 641 S.E.2d 77 (2007); Jeter v. Commonwealth, 44 Va. App. 733, 740-41, 607 S.E.2d 734, 737 (2005) ("Permitting an appellant to sidestep the provisions of Rule 5A:20(e) by citing authorities only in his reply brief would therefore deprive the appellee of the opportunity to meaningfully respond to the appellant's argument, thereby eviscerating the underlying purpose of the Rule.").

- 9 -

subtle matters of intent. Underlying the appellate standard of review is the recognition that the "trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources." Haskins v. Commonwealth, 44 Va. App. 1, 11, 602 S.E.2d 402, 407 (2004) (citations omitted). "In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much. As the Court has stated in a different context, the trial on the merits should be the main event . . . rather than a tryout on the road." Id. (citations and internal quotation marks omitted).

### B. NON-DISCLOSURE FRAUD & CONTEMPT OF COURT

On the issue of non-disclosure fraud, Hardey braces his entire argument against the trial court's pretrial ruling dismissing his show-cause petition seeking a contempt finding against Metzger for violating the divorce decree. Metzger violated that decree, Hardey contends, by failing to disclose all her assets during the negotiation period preceding the execution of the property settlement agreement.

Under Code § 20-109.1, a court may "affirm, ratify and incorporate by reference" a property settlement agreement into a final divorce decree. The agreement thereafter "shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree." Id.[5] That does not mean, however, that the trial court *must* use its

---

[5] See Rogers v. Rogers, 51 Va. App. 261, 273, 656 S.E.2d 436, 442 (2008) ("The 'parties are free to access the equitable powers of the court to enforce the decree, including the terms of the agreement.' A court may [also] enforce its decree by holding non-compliant parties in contempt." (quoting Campbell v. Campbell, 32 Va. App. 351, 356, 528 S.E.2d 145, 147 (2000)));

contempt powers to enforce such agreements or that contempt is the *only* available method of enforcement. When the contempt remedy ill-suits the particular dispute, a trial court remains free under "contract law" to enforce the incorporated agreement through specific performance or monetary relief. Rubio v. Rubio, 36 Va. App. 248, 253, 549 S.E.2d 610, 613 (2001) (quoting Herring v. Herring, 33 Va. App. 368, 373-74, 533 S.E.2d 631, 634 (2000)).

After all, the "inherent power of the court to punish for contempt is discretionary." Epperly v. County of Montgomery, 46 Va. App. 546, 555, 620 S.E.2d 125, 130 (2005). "'It is within the discretion of the trial court' to conduct civil contempt proceedings, thus we review the exercise of a court's contempt power under an abuse of discretion standard." Petrosinelli v. People for Ethical Treatment of Animals, 273 Va. 700, 706, 643 S.E.2d 151, 154 (2007) (citations omitted). "When dealing with discretionary decisions, only 'when reasonable jurists could not differ can we say an abuse of discretion has occurred.'" Robbins v. Robbins, 48 Va. App. 466, 482, 632 S.E.2d 615, 623 (2006) (citation omitted).

In this case, the trial court did not abuse its discretion by concluding that the remedy of contempt ill-suited the non-disclosure fraud claim asserted by Hardey. That fraud, if it existed at all, occurred prior to the entry of the final decree. The remedy of contempt, at least in the context of enforcing decrees, must necessarily be predicated on contemptuous conduct in violation of the decree. "If the actions of the alleged contemnor do not violate a clearly defined duty imposed upon him or her by a court's decree, the alleged contemnor's actions do not constitute contempt." Wilson v. Collins, 27 Va. App. 411, 424, 499 S.E.2d 560, 566 (1998). "Thus, 'there must be an express command or prohibition' which has been violated in order for a proceeding in contempt to lie." Petrosinelli, 273 Va. at 707, 643 S.E.2d at 155 (citation omitted).

---

see also Owney v. Owney, 8 Va. App. 255, 259, 379 S.E.2d 745, 748 (1989) (incorporation of PSA into final decree permits trial court to use contempt power to enforce terms of PSA).

As the trial court correctly reasoned, no legal fiction could overcome the illogic of finding Metzger contemptuously violated a decree prior to its entry.

Recognizing this impossibility, Hardey's argument on appeal appears to conflate the court's contempt remedies with its equitable powers to enforce the agreement's provisions governing after-discovered non-disclosure fraud. Even with this conflation, Hardey's non-disclosure claim fails because the trial court found that "at the time of the property settlement agreement" no evidence proved that "Ms. Metzger had hidden any assets from her husband." Both parties had placed the issue before the court, albeit in other contexts, and the court heard extensive evidence on the subject.

Hardey does not argue on appeal that the trial court erred in addressing the factual merits of the non-disclosure issue. No question presented raises the point. See generally Klein, 49 Va. App. at 481, 642 S.E.2d at 315 (declining to address argument "not included in husband's question presented"). Nor do any of Hardey's arguments on brief mention the trial court's specific factual finding. Id. ("We will not search the record for errors in order to interpret the appellant's contention and correct deficiencies in a brief." (citation omitted)). For this reason, this finding has become unreviewable on appeal — thereby rendering moot Hardey's argument that the trial court failed, either through its contempt powers or its equitable remedies, to enforce the property settlement agreement's non-disclosure provision.

### C.    AWARD OF ATTORNEY FEES TO METZGER

Hardey challenges the award of attorney fees on two grounds. He first argues that the trial court erroneously admitted into evidence fee invoices not disclosed during discovery. Second, he contends the court erroneously failed to consider the specifics of the pretrial settlement offers between the parties.

- 12 -

We sympathize with Hardey on his first complaint. In discovery, Hardey requested all documents supporting Metzger's attorney fee claim. Metzger provided fee invoices existing at the time of her discovery response but did not supplement her response with later invoices prior to trial. Rule 4:1(e)(2) requires a party to supplement a prior discovery response if it is "in some material respect incomplete or incorrect" and the requesting party is unaware of the supplemental information. See, e.g., Ayala v. Aggressive Towing & Transport, Inc., 276 Va. 169, 174, 661 S.E.2d 480, 483 (2008) (finding that defendants failed to "timely supplement[] their discovery disclosures"). Rule 4:1(e)(2)'s duty to supplement is self-executing. It need not be triggered by a motion to compel.

Even so, it does not necessarily follow that the trial court must always bar the non-disclosed evidence from being admitted at trial. The proper remedy remains within the sound discretion of the trial court. We review such decisions under an abuse-of-discretion standard which, "if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'" Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (quoting Henry J. Friendly, Indiscretion About Discretion, 31 Emory L.J. 747, 754 (1982)), adopted upon reh'g en banc, 45 Va. App. 811, 613 S.E.2d 870 (2005).

We cannot say the trial court abused its discretion in not excluding the previously undisclosed invoices from being admitted into evidence. It is true Metzger failed to supplement her discovery responses. It is equally true, however, that Hardey could not realistically assume Metzger did not continue to incur legal fees in the months preceding the trial. Obviously she did. At trial, Hardey raised no specific claim of prejudice. He did not, for example, contend he needed more time to study the invoices to insure the reasonableness of the fees or the hours devoted to specific litigation tasks. Nor did he claim his litigation strategy was affected in any way by the untimely disclosure or that he needed additional witnesses or documentary evidence

- 13 -

to attack the propriety of the fees.  In aggregate, these circumstances provided a reasonable basis for the trial court to admit the invoices into evidence notwithstanding Metzger's failure to supplement her discovery prior to trial.

As for Hardey's second objection — that the trial court erroneously refused to consider the details of the pretrial settlement offers — we cannot address this issue because Hardey did not proffer any specific information about these offers.  "When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error — much less reversible error — without 'a proper showing of what that testimony would have been.'"  Tynes v. Commonwealth, 49 Va. App. 17, 21-22, 635 S.E.2d 688, 689-90 (2006) (citation omitted).  "Such a proffer allows us to examine both the 'admissibility of the proposed testimony,' and whether, even if admissible, its exclusion 'prejudiced' the proffering party."  Id. (citation omitted).  "We can perform this examination only when the proponent proffers the 'testimony he expected to elicit,' rather than merely his theory of the case."  Id. (citations omitted).  "To be sure, even when 'we are not totally in the dark concerning the nature of the evidence,' we still must 'know enough about the specifics' to be able to 'say with assurance' that the lower court committed prejudicial error."  Id. (citation omitted); see also Commonwealth Transp. Comm'r v. Target Corp., 274 Va. 341, 348, 650 S.E.2d 92, 96 (2007).

Here, the trial court admitted Hardey's testimony that he attempted six times to settle the case prior to trial.  The court refused to admit evidence of the specific terms of the refused offers.[6]  At no point, however, did Hardey make an oral or written proffer of the specific terms

---

[6] The trial court *overruled* Metzger's objection to Hardey's testimony regarding "settlement discussions."  J.A. 832.  The objection was sustained only with respect to testimony about specific terms of the offers.  Id.  Based upon these rulings, Hardey testified that he made "six offers" of settlement prior to trial.  Id.  In her closing argument, Hardey's counsel emphasized these offers as evidence of Hardey's good-faith efforts "over the past three years to buy the peace."  Id. at 2490.

of these rejected settlement offers. Nor did the trial court preclude Hardey's counsel from making a proffer for the record. Without a proffer, we have no way of determining whether Hardey's six offers were arguably reasonable (tending to absolve Hardey of any responsibility for the continued litigation) or patently unreasonable (adding support to Metzger's allegation that Hardey exacerbated the costs of this already protracted litigation). The record thus provides no basis to conclude that the trial court committed prejudicial error in sustaining Metzger's objection to the specific details of Hardey's six settlement offers.

### D. AWARD OF PREJUDGMENT INTEREST TO METZGER

The trial court awarded Metzger prejudgment interest on her indemnification claim. The court ran the interest from the date Metzger filed her show-cause petition rather than from the date she incurred the loss. She claims the trial court erred in doing so. We agree.

Code § 8.01-382 codified, without elaboration, antecedent common law principles of "natural justice" that permit an award of prejudgment interest in limited circumstances. J.W. Creech, Inc. v. Norfolk Air Conditioning, 237 Va. 320, 325, 377 S.E.2d 605, 608 (1989) (quoting Jones, Ex'r v. Williams, 6 Va. 85, 87 (2 Call 103, 106) (1799)). Under the common law, "the usual rule that 'interest follows principal' is long and well established." Mary Helen Coal Corp. v. Hudson, 235 F.3d 207, 210 (4th Cir. 2000).

Because prejudgment interest seeks "to make the plaintiff whole," Virginia law treats it as "part of the actual damages sought to be recovered." Dairyland Ins. Co. v. Douthat, 248 Va. 627, 631-32, 449 S.E.2d 799, 801 (1994) (quoting Monessen Southwestern Ry. v. Morgan, 486 U.S. 330, 335 (1988)). Prejudgment interest "is not awarded as a penalty; it is merely an element of just compensation." City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 197 (1995). "The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." Id. at 195.

Here, the trial court inexplicably ran the prejudgment interest rate from the date of the filing of the show-cause petition rather than the date the loss was incurred. Though Metzger specifically objected to this ruling, the trial court did not provide any explanation for its decision. From the record before us, we cannot discern a reasonable basis for the trial court's decision to calculate the prejudgment interest award in this manner. We reverse the court's prejudgment interest award and remand with instructions to recalculate the award based upon the date the loss was incurred.[7]

### III.

In sum, we reject Hardey's challenges to the trial court's rulings on his claims of extortion and non-disclosure fraud. We similarly find no prejudicial error in the trial court's attorney fee award to Metzger. Concluding that the court erred in calculating the award of prejudgment interest to Metzger, we reverse that aspect of the final order and remand for the entry of a prejudgment award running from the date Metzger incurred the loss.[8]

<u>Affirmed in part, reversed in part, and remanded.</u>

---

[7] On remand, the court's recalculation of prejudgment interest must take into account Hardey's payments on the debt from September 2002 to December 2003. In this regard, we note that the final order of October 4, 2007, includes two printed provisions stating that the indemnity award was $136,295.06 "plus interest at the judgment rate from July 3, 2007 until paid . . . ." This appears to have been the calculation proposed by Metzger's counsel. See J.A. at 2682-85. Following the hearing in which Hardey objected to this calculation, the trial court added a handwritten provision stating: "Interest will accrue from February 6, 2006. Mr. Travostino will attach a computation of interest to this order by close of business October 23, 2007." The printed provisions were not crossed-out or otherwise deleted. To the extent any inconsistencies exist between the order's printed and handwritten provisions, or between the figures and dates in the order and those on the attached interest computation, the court should resolve any such ambiguities on remand and enter a final order without any computational inconsistencies.

[8] We deny both parties' respective motions for attorney fees incurred in this appeal, finding neither advanced positions which we find to be unreasonable given the circumstances of this case. See generally Petry, 41 Va. App. at 796 n.7, 589 S.E.2d at 465 n.7; O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).