COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Causey and Bernhard
Argued at Fredericksburg, Virginia


JENNIFER MICHAELA BETHEL

                                                   MEMORANDUM OPINION* BY
v.        Record No. 1063-23-4                     JUDGE DAVID BERNHARD
                                                   JUNE 24, 2025
SEAN ROBERT BETHEL


            FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                        Louise M. DiMatteo, Judge

            Matthew W. Edwards (Mallory P. Broberg; Ain & Bank, P.C., on
            briefs), for appellant.

            Sean Bethel, *pro se*.


        Jennifer Michaela Bethel ("wife") appeals the circuit court's final decree of divorce from

Sean Robert Bethel ("husband").  Wife argues the circuit court distributed the parties' marital

home in a manner inconsistent with their premarital agreement by awarding husband a lump sum

award calculated as half the value of the couple's combined ownership interests in the home.

Finding the circuit court failed to apply the terms of the premarital agreement, this Court reverses

the judgment and remands the matter to the circuit court for further proceedings consistent with

this opinion.

---

        * This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Husband and wife married in 2007; they have two children. Before marrying, the couple signed a premarital agreement. The premarital agreement "define[d the couple's] respective rights" in property each had acquired before the marriage and "that which they will acquire during the marriage in the future." The parties acknowledged each had made a "full disclosure of all income and assets owned," and each party attached a financial statement summarizing their assets.

Paragraph 7 of the premarital agreement provided that "all property . . . belonging to [wife] at the commencement of the marriage and any property acquired by [wife] during the marriage" would "remain [wife's] separate property."[2] Under the agreement, separate property remained "free from any claim or demand by [the other party] at any time during the marriage or in the event of separation, divorce, or death." The parties also agreed that any "monetary or non-monetary contribution" made by one party would "not constitute or create an interest subject to equitable distribution" in separate property of the other. In a divorce proceeding, ownership of property bearing "written evidence of title such as a deed" would be determined according to that title, "irrespective of monetary or non-monetary contributions made by either party."

In 2019, husband and wife acquired a house in Arlington, Virginia, for $1,750,000.[3] Husband and wife owned the house as tenants in common with the Froehlich Revocable Living

---

[1] "When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Payne v. Payne*, 77 Va. App. 570, 579 n.1 (2023) (quoting *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021)).

[2] Paragraph 8 similarly defined husband's separate property.

[3] A mortgage statement for the home dated December 1, 2022, in the name of both husband and wife, reflected a loan balance of just under $745,000. At trial, husband was asked to confirm the original loan he and wife secured for the purchase in 2019 was $800,000. In response he indicated he was not sure.

Trust ("the Trust"), a trust created by wife's parents.[4] The deed to the house indicated wife and the Trust each owned a 48.5% interest in the house, and husband owned the remaining 3% interest.

In 2020, husband and wife separated. Wife filed a complaint for divorce, seeking custody of and support for the minor children and "exclusive use and possession" of the marital home. Wife asserted it was "not clear" whether the circuit court could order equitable distribution of the marital home under the terms of the premarital agreement, so in an amended divorce complaint, she asked the circuit court, in the alternative, to partition the property under Code §§ 8.01-81 to -93 so that she could acquire husband's ownership interest in the marital home by sale.[5] Husband filed an answer and counterclaim. Husband later moved to set aside the premarital agreement as unenforceable due to coercion and duress.

At the hearing on husband's motion, husband testified that wife's father, Rick Froehlich, had "threatened" him and forced him to sign the premarital agreement before marrying wife. Husband acknowledged Froehlich had hired an attorney to assist husband in reviewing and negotiating the premarital agreement but claimed the attorney was "incompetent" and "provided [him] with very little information." Husband alleged he did not receive the agreement until two weeks before the wedding and that Froehlich intended to hold husband responsible for paying half the wedding expenses if the wedding did not occur. Husband argued he was coerced into signing the agreement because declining would have "ruin[ed] his life" and "wrecked [him] financially."

---

[4] Absent agreement to the contrary as was the case here, the equitable distribution statute treats as marital property subject to distribution not only property acquired during the marriage (apart from gifts and property traceable to separate property), but also "all property titled in the names of both parties, whether as joint tenants, tenants by the entirety or otherwise." Code § 20-107.3.

[5] Wife's initial complaint for divorce merely asked for exclusive use and possession of the marital home without further clarification.

The circuit court found husband had not met his burden to prove he was coerced into signing the premarital agreement. In addition, the circuit court found husband had presented no evidence the agreement was unconscionable or that it failed to disclose wife's financial or property obligations. Accordingly, the circuit court denied husband's motion to set aside the premarital agreement.

The parties next appeared before the circuit court for trial on the grounds for divorce, custody and visitation, child support, and division of the marital home. Wife presented evidence that she, husband, and her parents signed a document titled "Designation of Form of Ownership" at the closing on the marital home, "defining [their] shares in the house so [they] could purchase it." The document referenced a settlement date of March 14, 2019, and indicated wife, husband, and the Trust owned the marital home as tenants in common and stated the parties' ownership interests as percentages.[6] The circuit court also took judicial notice of the deed to the marital home as a publicly recorded land record.[7]

Wife testified she and husband were both on the mortgage note for the marital home but denied making equal contributions to repay the loan with husband. Instead, wife explained that her parents assisted with the monthly mortgage payments and other expenses through loans and a monthly gift of $500. According to wife, husband was responsible for other expenses such as medical insurance and utilities.

Froehlich testified he determined the ownership percentages of the parties in the marital home at closing. Froehlich explained the Trust had a 48.5% ownership interest in the marital home because it "put in a significant portion of the down payment" and wife's 48.5% ownership interest

---

[6] The "Designation of Form of Ownership," bearing husband's signature, like the deed, indicated wife and the Trust each had a 48.5% ownership interest in the home and husband had a 3% ownership interest.

[7] The deed was recorded on March 15, 2019.

was based on "gifts from [her parents] on an annual basis that w[ere] used for her equity in the home." According to Froehlich, husband did not contribute to the down payment on the marital home, but Froehlich decided to give husband "credit for" his contributions to "the principal payments" for the townhome where husband and wife had lived. This amount equaled 2.4% of the total down payment on the marital home, so Froehlich "rounded it up" and gave husband a 3% ownership interest. Froehlich, a former real estate agent, estimated the value of the marital home at the time of the hearing at $1.9 million and the equity in the property at $1,155,363, considering the remaining mortgage balance.

Husband claimed he and wife had split the monthly mortgage payments equally for "roughly [ten] years" during their marriage, both for the marital home at issue and for the couple's previous residences. According to husband, "[e]very single one of [his] paychecks went directly into [their] bank accounts" out of which the monthly mortgage payments were paid and "roughly more than half [his] income each month" was used to make mortgage payments. Husband agreed with Froehlich's valuation of the marital home at $1.9 million. Husband, however, disputed the authenticity of the signed Designation of Form of Ownership, alleging he did not "ever recall seeing" it before. Husband contended that if he had seen the document, he "would have said something" about receiving only a 3% ownership interest "when for 15 years [he and wife had] been splitting [their] finances equally."

Husband asked the circuit court to divide the equity in the marital home equally between the Trust, wife, and himself. Wife asked the circuit court to divide the marital home under "the civil partition statute" so she could purchase husband's ownership interest. Wife argued the parties' ownership interests as expressed in the deed were "binding," but believed the terms of the premarital agreement could be interpreted as giving the circuit court "a little discretion" in whether it valued husband's ownership interest at 3% of the home's equity or of its overall value.

The circuit court noted the premarital agreement required it to distribute the property based on the parties' ownership interests specified in the deed. Hence, the circuit court calculated the value of husband's ownership interest at $34,661, or 3% "of the marital home equity." Nonetheless, the circuit court was "very concerned about that division" because of some of its factual findings. The circuit court found husband and wife co-mingled their paychecks and that there was no evidence the mortgage payments were made only from wife's separate funds. Therefore, the circuit court concluded that "both of the parties contributed equally to the household funds," including mortgage payments, during the marriage. The circuit court also found that when husband signed the "Designation of Form of Ownership" agreement, he "clearly d[id] not understand" the effect of its terms combined with the terms of the premarital agreement; if he had, the circuit court doubted he would have contributed to the mortgage "in the manner that he did."

The circuit court acknowledged it could not "undermine" the premarital agreement with respect to division of the marital home but concluded that it could "provide for other payment." The court held that equity required wife to pay a "lump sum" of $262,844 to husband, based on the duration of the marriage, husband's contributions to the marriage, and husband's "decline in his mental health." The court noted that this lump sum award was "on top of" the amount wife would pay husband for the 3% ownership interest in the marital home.[8] The court determined the lump sum award by combining the couple's ownership interests in the marital home into "a total marital asset of 51.5[%] of the equity," dividing that value in half, and subtracting husband's 3% interest.

At a subsequent hearing, wife asked the circuit court to reconsider the $262,844 lump sum award, arguing that it was inconsistent with the premarital agreement. Denying wife's request, the circuit court stated that it "ha[d] to evaluate the full contributions of both parties in the marriage, and

---

[8] The circuit court also emphasized the lump sum award was "[c]ertainly not spousal support," because husband and wife had waived spousal support in the premarital agreement.

this is how [it] decided the equities . . . would be disbursed." According to the circuit court, the lump sum award was "not inextricably linked to the home," but the value of the home was part of the "calculations that drove that figure . . . because that's what [husband] testified to about how they paid for things regarding several of their real property holdings."

At a later hearing, the circuit court adjusted its judgment so husband no longer received the $34,661 award representing his 3% ownership interest in the marital home separately from the larger lump sum award. Instead, the circuit court awarded husband a single lump sum award of $297,505.97, representing half of husband's and wife's combined 51.5% ownership interests in the marital home. The circuit court explained that because both parties had contributed equally to the marriage, "each of them should be splitting their percentages 50/50." The circuit court found it unfair to allocate husband 3% in separate property compared to wife's 48.5% and "d[idn't] believe that these were separate interests in the property." The circuit court concluded: "my opinion is that the 51.5[%] of that property is marital, and that's why I split it that way."

On May 23, 2023, the circuit court entered a final decree of divorce granting wife "exclusive right to ownership, use, and possession of the [m]arital [h]ome" and ordering her to pay husband $297,506. Wife appealed.

ANALYSIS

Ordinarily, this Court will not overturn a circuit court's equitable distribution award unless there has been "an abuse of discretion, misapplication or wrongful application of the equitable distribution statute, or lack of evidence to support the award." *Sobol v. Sobol*, 74 Va. App. 252, 272 (2022) (quoting *Dixon v. Dixon*, 71 Va. App. 709, 717-18 (2020)). "[A] trial court definitionally abuses its discretion when it commits an error of law." *Id.* at 285. Interpretation of the parties' premarital agreement, like any contract, "presents a question of law subject to de novo review."

*Yazdani v. Sazegar*, 76 Va. App. 261, 270 (2022) (quoting *PBM Nutritionals, LLC v. Lexington Ins. Co.*, 283 Va. 624, 633 (2012)).

Wife argues the circuit court erred by awarding husband the lump sum of $297,506 because the premarital agreement "explicitly foreclosed" any award to husband based on wife's separate ownership interest in the marital home, regardless of any contributions made by husband. She further contends the circuit court's finding that husband did not understand the effect of the premarital agreement in connection with the documents assigning ownership interests in the marital home did not justify its "departure from the [a]greement's plain terms," especially considering the circuit court had already declined to set aside the premarital agreement as unenforceable.

"Under settled principles, the 'law presumes property acquired during a marriage to be marital, not separate, property.'" *Vilseck v. Vilseck*, 45 Va. App. 581, 587 (2005) (quoting *Smith v. Smith*, 43 Va. App. 279, 286 (2004)). Nevertheless, couples "may defeat that presumption by agreement." *Id.* (quoting *Smith*, 43 Va. App. at 286). Under Virginia's Premarital Agreement Act, "[a] premarital agreement . . . [that is] in writing and signed by both parties . . . shall be enforceable without consideration and shall become effective upon marriage." Code § 20-149; *see also* Code § 20-107.3(I) ("Agreements, otherwise valid as contracts, entered into between spouses prior to the marriage shall be recognized and enforceable."). Consequently, "to the extent that the parties have already stipulated to a particular disposition of their property" in such an agreement, "the court *may not* decree inconsistent relief in equitable distribution." *Campbell v. Campbell*, 32 Va. App. 351, 356 (2000) (emphasis added).

Premarital agreements are "interpreted and enforced no differently than any other type of contract." *Vilseck*, 45 Va. App. at 588 (quoting *Smith*, 43 Va. App. at 286). Accordingly, "we employ 'rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms.'" *Id.* (quoting *Smith*, 43 Va. App. at 287).

The circuit court's lump sum award of $297,506 is inconsistent with the unambiguous terms of the agreement and the trial court's own findings, and is contrary to established precedent. The plain language of the agreement states each party's separate property acquired either before or during the marriage would "remain [that party's] separate property" and the property's ownership would be determined according to the "written evidence of title such as a deed." In fact, the circuit court acknowledged that it was bound by the terms of the premarital agreement. The parties presented evidence of the deed indicating the marital home was titled as a tenancy in common with husband owning a 3% interest and wife owning a 48.5% interest. Therefore, the circuit court was not authorized to divide husband and wife's combined ownership interests in the home equally. Although the circuit court attempted to characterize the $297,506 award as "other payment" that was "not inextricably linked to the home," the couple's ownership interests in the marital home formed the entire basis for the circuit court's calculation of the award. The circuit court specifically found "51.5[%] of the property is marital" and explained "that's why I split it that way."

The circuit court determined husband was entitled to the $297,506 lump sum award in part based on his contributions to the marriage, including mortgage payments. The plain language of the parties' premarital agreement, however, stated that its terms regarding separate property applied regardless of any "monetary or non-monetary contributions" made by either party. Under the terms of the premarital agreement, the circuit court did not have authority to divide the marital home based on the parties' contributions.

In addition, the circuit court reasoned that the lump sum award was appropriate because husband "clearly d[id] not understand" the effect of the terms of the premarital agreement combined with the document he signed at closing assigning ownership interests in the marital home. Nonetheless, that finding is insufficient for the circuit court to refuse to enforce the premarital agreement. A premarital agreement is unenforceable only if the party seeking to prevent its

enforcement "did not execute the agreement voluntarily" or if "[t]he agreement was unconscionable when . . . executed and, before execution of the agreement," the party did not receive "a fair and reasonable disclosure of the property or financial obligations of the other party" and did not "voluntarily and expressly waive" in writing any right to such disclosure. Code § 20-151(A).

Here, the circuit court's finding that husband did not fully understand how the document assigning ownership interests in the marital home would operate with the premarital agreement, even if true, does not demonstrate husband entered the premarital agreement *itself* involuntarily or that the premarital agreement was unconscionable or that husband received insufficient disclosure of wife's finances. Moreover, the circuit court expressly evaluated the premarital agreement under this standard and declined to set it aside as unenforceable.[9] Once the trial court found the agreement enforceable, its duty was to apply the terms as written. *See Campbell*, 32 Va. App. at 356.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed and remanded for further proceedings consistent with this opinion.[10]

*Reversed and remanded.*

---

[9] Husband did not assign cross-error to this finding and therefore the validity and enforceability of the agreement is not at issue. To bring a cross-error on appeal, husband was obliged to include in his brief "a statement of any additional assignments of error the appellee wishes to present with a clear and exact reference to the page(s) of the record or appendix where each additional assignment of error was preserved in the trial court." Rule 5A:21(b). Failure to comply with this rule waived any contest to the trial court's determination that the agreement was valid. *See*, *e.g.*, *Joseph v. George*, No. 2143-09-4, slip op. at 2, 2010 Va. App. LEXIS 173, at *2 (May 4, 2010).

[10] Wife also contends she is "entitled to equitable partition" under Code § 8.01-81 and asks this Court to "instruct[]" the circuit court "to employ this mechanism" on remand to allow her to purchase husband's interest in the marital home. Whether the partition wife seeks is appropriate is for the circuit court to determine in the first instance upon remand.