PRESENT: Hassell, C.J., Lacy, Keenan, Koontz, and Lemons, JJ., and Compton, S.J., and Whiting, R.J.

STANDARD BANNER COAL CORPORATION

                                        OPINION BY

v.  Record No. 021075      JUSTICE DONALD W. LEMONS
                                     February 28, 2003

RAPOCA ENERGY COMPANY, LP

FROM THE CIRCUIT COURT OF DICKENSON COUNTY
Donald A. McGlothlin, Jr., Judge

In this appeal, we consider whether several amendments and supplements to a fifty-year coal lease altered the lease to allow the lessee to extend the lease beyond its stated termination date without satisfying certain contractual terms.

I.  Facts and Procedural Background

On December 15, 1949, Standard Banner Coal Corporation ("Standard Banner"), as lessor, entered into a Lease and Rent Agreement (the "1949 Lease") with Banner Splashdam Coal Company ("Banner Splashdam"), the predecessor of Rapoca Energy Company, LP ("Rapoca"), as lessee. The 1949 Lease provided for Standard Banner to lease "all the mineable and merchantable coal of the thickness of thirty-four (34) inches and up" on approximately 5,480 acres in Dickenson County to Banner Splashdam for mining operations. The 1949 Lease further provided:

> (1) This lease and rental agreement shall run for a period of fifty (50) years, or until all the mineable and merchantable coal of the thickness of thirty-four (34) inches and up on the leased premises has been mined and removed,

whichever event takes place first, unless sooner terminated by forfeiture.

. . . .

(5) The LESSEE covenants and agrees to mine, at least, seventy-five (75) percent of all mineable and merchantable coal from the leased premises of the thickness of thirty-four (34) inches and up, and to continue its mining operations until, at least, seventy-five (75) percent of the mineable and merchantable coal of such thickness on the leased premises has been mined, provided, however, that same can be accomplished within said fifty (50) years.

On November 21, 1969, Standard Banner and Banner Splashdam entered into the first of two supplemental agreements. The 1969 Supplemental Agreement (the "1969 Supplement") provided for the lease of "any and all coal" but made no mention of any depth specifications or mining minimums which would alter Paragraph (5) of the 1949 Lease. In addition to other less relevant modifications, the 1969 Supplement further contained the following provision:

6. The following shall be added to Paragraph 1 of the said original lease agreement: "Provided all of the terms and conditions of this lease have been properly complied with the lessee at its option may extend this lease for an additional term of twenty (20) years by giving the party of the first part written notice of its intention so to do not later that six (6) months prior to the otherwise expiration date. In the event of such extension all of the terms and conditions as set out in the said lease of December 15, 1949 and supplements but those subject to all of the terms stated in this agreement shall continue in full force and effect during such extension.["]

After the 1969 Supplement and before the Second Supplemental Agreement (the "1984 Supplement"), which was effective as of November 1, 1983, Banner Splashdam assigned all its rights and responsibilities under the lease to Rapoca. The 1984 Supplement, entered into by Standard Banner and Rapoca, contained the following provision that recognized the validity of the 1949 Lease and 1969 Supplement:

> 2. Acknowledgement of Validity of Prior Agreements. Lessor and Lessee recognize and acknowledge the validity and binding effect of the 1949 Lease and 1969 Supplement as modified by this [1984 Supplement].

In addition, the 1984 Supplement re-addressed the issue of extension of the lease at the end of fifty years in 1999:

> 13. Term and Payments after Exhaustion. The term of the lease shall run until December 15, 1999, and, at the option of Lessee upon notice in writing to Lessor mailed or delivered by June 15, 1999, for an additional period of 20 years following December 15, 1999, or, whether during the initial or option term, until all the mineable and merchantable coal has been mined and removed, whichever occurs first . . . .

By letter dated May 18, 1999, Rapoca submitted notice to Standard Banner that it intended to exercise its option "[p]ursuant to Numerical Paragraph 13, of [the 1984 Supplement]" to renew the 1949 Lease for an additional twenty years until December 15, 2019. In reply, by letter dated November 10, 1999, Standard Banner terminated the 1949 Lease effective at its original contractual termination date, December 15, 1999.

3

Standard Banner maintained that Rapoca "has failed to mine 75% of the coal 34 inches and above during the term of the lease." Standard Banner further maintained that "while subsequent modifications have occurred, none have released RAPOCA from the explicit requirement to comply with the terms and conditions of the 1949 lease."

On January 5, 2000, Rapoca filed a bill of complaint against Standard Banner alleging that the 1969 Supplement and 1984 Supplement collectively eliminated the "requirement of the 1949 Lease that 75% of the mineable and merchantable coal 34 inches in thickness and up be mined within the original lease term." In the alternative, Rapoca alleged that the effect of the two supplements was to "extend the time to mine 75% of the coal 34 inches in thickness and up to the end of the extension period if Rapoca chose to extend." Rapoca asked the trial court to declare that its notice of lease extension was valid and that the lease remain in "full force and effect" throughout the extension period.

Standard Banner filed an answer to the bill of complaint denying the allegations and a motion for partial summary judgment, asking the trial court "to find that Rapoca's extension was ineffective" because of lack of compliance with all of the terms and conditions of the lease, specifically the "75% requirement." Rapoca responded with a motion for summary

judgment arguing that "[it] was not required to mine 75% of certain of the coal as a condition to exercising its right to extend the lease term."

By Final Order dated January 30, 2002, relying on "the grounds stated in Rapoca's Memorandum in Support[,]" the trial court granted Rapoca's motion for summary judgment and denied Standard Banner's motion for partial summary judgment. The trial court further ruled that "Rapoca's notice of lease extension is valid and effective and the lease which is the subject of this controversy is in full force and effect." Standard Banner appeals the adverse judgment of the trial court.

## II. Analysis

Standard Banner assigns error as follows:

(1) The trial court erred by imposing upon Standard Banner a 20-year term extension of the 1949 Lease in favor of Rapoca Energy Company by ignoring or rendering useless language specifically preserved from the prior Lease and Supplement.

(2) The trial court erred by deleting performance requirements preserved from the 1949 Lease and 1969 Supplement which were neither specifically deleted nor inconsistent with the language of the 1984 Supplement.

(3) The trial court erred by failing to apply the well established rules of statutory construction which rendered language in favor of Standard Banner Coal Corporation meaningless by deleting it when the same had not been specifically deleted by the 1984 Supplement to the 1949 Lease and 1969 Supplement.

5

These assignments of error involve interpretation of the 1949 contract and its various amendments. We are not bound by the trial court's construction of contract terms, but rather, "[w]e have an equal opportunity to consider the words within the four corners of the disputed provision." T.M. Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002) (quoting Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984)).

"It is the function of the court to construe the contract made by the parties, not to make a contract for them." Wilson, 227 Va. at 187, 313 S.E.2d at 398. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. Bridgestone/Firestone, Inc. v. Prince William Square Assoc., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). No word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it and the parties are presumed not to have included needless words in a contract. D.C. McClain, Inc. v. Arlington County, 249 Va. 131, 135—36, 452 S.E.2d 659, 662 (1995). Utilizing these principles of contract interpretation, we conclude that the trial court erred.

Paragraphs (1) and (5) of the 1949 Lease, read together, required the lessee to mine within fifty years at least seventy-five percent (75%) of the mineable and merchantable coal of a

6

thickness of thirty-four (34) inches and up from the leased premises. The economic utility of a coal lease to a lessor depends upon the generation of royalties. While there may be minimum payments under the terms of a lease, the lessor is primarily interested in production which generates royalties.

The 1969 Supplement to the lease "added" (in Paragraph (6)) a twenty-year extension provision to Paragraph (1) but did not alter the seventy-five percent (75%) exhaustion provision. In fact, that provision was reinforced by language conditioning the new extension provision upon "all of the terms and conditions of this lease [having] been properly complied with."

In 1984, the lease was supplemented again. In Paragraph (13) entitled "Term and Payments after Exhaustion" (emphasis added), the ability to extend the lease for a period of twenty years (as provided by Paragraph (6) of the 1969 Supplement) was restated and an additional potential termination date for the lease was added, namely the date when "all mineable and merchantable coal has been mined and removed." Nothing in the 1984 Supplement affected the seventy-five percent (75%) mining requirement borne by the lessee in the 1949 Lease.

Simply stated, it is clear that no extension under the lease may occur unless the seventy-five percent (75%) mining requirement has been met. The trial court erred in holding to the contrary.

7

Accordingly, we will reverse the judgment of the trial court and remand for further proceedings not inconsistent with this opinion.

<u>Reversed and remanded</u>.