PRESENT:  All the Justices

WAIKOLOA LIMITED PARTNERSHIP

v.  Record No. 031909   OPINION BY JUSTICE BARBARA MILANO KEENAN
                                     June 10, 2004
GEORGE A. ARKWRIGHT, ET AL.

              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Gaylord L. Finch, Jr., Judge


     In this appeal involving the dissolution of two limited partnerships, we consider whether the chancellor erred in requiring one limited partner to purchase the partnership interests of certain other limited partners.

     The following facts are relevant to this appeal.  In December 1969, four Virginia limited partnerships, Eiwa Waikoloa Investment Syndicate (Eiwa), Ehiku Waikoloa Investment Syndicate (Ehiku), Ewalu Waikoloa Investment Syndicate (Ewalu), and Eono Waikoloa Investment Syndicate (Eono), purchased about 891 acres of undeveloped land in Waikoloa, Hawaii.  Each of the four partnerships owned an undivided percentage interest in the whole of the property.  Eiwa owned a 10 percent interest in the property, and Ehiku owned a 25 percent interest.  Ewalu and Eono owned respective interests of 15 percent and 50 percent.

     Joseph D. and Jane A. Coker, husband and wife, served as general partners for each of the four partnerships.  Joseph was the "managing general partner" responsible for conducting partnership operations and was the "real estate expert" on whose

expertise the limited partners relied.  Jane was primarily responsible for maintaining the business records for each of the partnerships.

George A. Arkwright, Robert Faust, and Chalmers A. Loughridge, Trustee of the Ruth Loughridge Trust (collectively, the minority partners), are limited partners in the Eiwa and Ehiku partnerships.  Arkwright and Faust each own a 5 percent interest in the Eiwa partnership.  Loughridge owns a 12 percent interest in the Ehiku partnership.

This appeal concerns the partnership agreements of Eiwa and Ehiku, each of which provided for automatic dissolution of the partnership on the "retirement, adjudication of insanity or bankruptcy, or death of a general partner."  Paragraph 19 of each agreement further provided, in relevant part:

> Upon dissolution of the partnership, the general
> partners, or if the dissolution be caused by
> retirement, insanity, bankruptcy, or death of one
> general partner, then the remaining or surviving
> general partners, shall proceed with dispatch to sell
> or liquidate the assets of the partnership and, after
> paying all liabilities to creditors of the
> partnership, distribute the net proceeds among the
> partners in proportion to their interests. . . .  In
> the event partners assuming a majority of at least
> sixty (60%) per cent of the total partnership
> interests shall determine that they wish to purchase
> the assets of the dissolved partnership, such majority
> partners shall have the absolute option and right to
> purchase the interests of the minority partners in
> such assets. . . .  Within sixty (60) days after all
> . . . written [appraisals] have been rendered, the
> majority partners shall notify the minority partners
> in writing of their decision whether to exercise the

2

option. . . . Settlement shall be completed within thirty (30) days after notice of the exercise of the option.

In November 1987, Joseph Coker required emergency surgery to remove a blood clot from his brain. Before this operation, Joseph executed a general power of attorney appointing Jane as his "agent and attorney-in-fact." Joseph never fully recovered from the surgery and, as a result, he could no longer manage the partnerships' business affairs.

In February 1988, Jane, individually and as Joseph's attorney-in-fact, entered into a memorandum agreement with Myron D. Bruns. The memorandum agreement stated that Bruns would be "responsible for [the] complete management" of each of the four partnerships, and further provided for transfer of management duties back to Joseph should he, "by judgement of professionals, be able to resume management of the investments."

Thereafter, Jane notified all the limited partners in the four partnerships that Joseph was "no longer able to continue the management of the investments." She informed the partners that Bruns had assumed these management responsibilities, and that she and Joseph would "remain as general partners/directors" and "retain all the responsibilities" outlined in the partnership agreements.

In October 1991, Bruns obtained a real estate appraisal (the 1991 appraisal) that fixed the market value of the property

at $8,700,000.  In 1994, Bruns formed Waikoloa Limited Partnership (Waikoloa), a Virginia limited partnership, for the purpose of restructuring the interests of the limited partners in the four original partnerships.  Jane sent a letter to all the limited partners informing them that Waikoloa had been created, among other reasons, to "combine the four syndicates into one new partnership" and to "clarify and protect the interest of all [p]artners should dissolution be triggered by [Joseph's] condition."

Under the Waikoloa partnership agreement, Waikoloa Properties, Inc., was named as the corporate general partner of the new partnership.  The limited partners of Eiwa, Ehiku, Ewalu, and Eono were informed that they could become limited partners in Waikoloa by assigning their interests in the four original partnerships to Waikoloa.

Ultimately, all the limited partners of the four original partnerships, except for the minority partners, assigned their partnership interests to Waikoloa.  By these assignments, Waikoloa acquired 100 percent of the partnership interests in Ewalu and Eono, and became the majority limited partner in Eiwa and Ehiku, acquiring respective interests of 90 percent and 88 percent in those partnerships.

After Jane Coker died in April 1998, Waikoloa sought to exercise the "buyout provision" detailed in Paragraph 19 of both

4

the Eiwa and Ehiku partnership agreements.  In April 1999, Waikoloa obtained an appraisal (the 1999 appraisal) that placed the "gross undiscounted market value" of the property at $3,655,000.  Waikoloa sought to purchase the minority partners' interests based on the 1999 appraisal.  The minority partners declined Waikoloa's request.

Waikoloa filed an amended bill of complaint against the minority partners in the circuit court asking the chancellor, among other things, to affirm Waikoloa's "right to purchase, subject to its exercise of the Purchase Option, the minority interests" of the minority partners, and to require the minority partners to "promptly sell" their interests to Waikoloa.[1]  In response, the minority partners filed a cross-bill in which they asked the chancellor to declare that the four original partnerships were dissolved upon Joseph Coker's "de facto retirement" in 1988, and that Waikoloa must pay the minority partners for their respective interests in an amount based on the value of the property at that time.

The chancellor referred the case to a commissioner in chancery, directing the commissioner to receive evidence and to report his findings to the court.  After conducting an

---

[1] The original complainants in the amended bill of complaint included Waikoloa, Eiwa, Ehiku, Waikoloa Properties, Inc., and the liquidating trustee, Coker Properties, LC.  However, Waikoloa is the only complainant before this Court on appeal.

5

evidentiary hearing, the commissioner submitted a report in which he found in favor of the minority partners.

In his report, the commissioner stated that "there [was] no question" that Joseph Coker effectively retired as a general partner of Eiwa and Ehiku in February 1988. The commissioner found that under the terms of Paragraph 19 of the partnership agreements, all four original partnerships were dissolved at that time. The commissioner further found, in relevant part:

> [I]n accordance with [P]aragraph 19 . . . it was the duty of Jane A. Coker as the remaining general partner to proceed with dispatch to sell or liquidate the assets of the partnership and, after paying all liabilities to creditors of the partnership, distribute the net proceeds among the partners in proportion to their interests.

Based on the 1991 appraisal, the commissioner valued the property at $8,700,000. After making discounts from that amount for the "bulk sale" of the property and the real estate commissions that would be incurred, the commissioner found that Loughridge should be paid $208,800 for his partnership interest, and that Arkwright and Faust each should receive $34,800 for their partnership interests. The commissioner also concluded that the minority partners should be paid interest on their judgment amounts from December 1992 "at the judgment rate until paid." However, the commissioner did not specify who should be responsible for paying these amounts to the minority partners.

6

Waikoloa filed various exceptions to the commissioner's report. Waikoloa asserted that if the commissioner's finding that Joseph Coker effectively retired in February 1988 was correct, then "the only ruling that can be supported by the evidence is that . . . all of the assets of all [four] partnerships should be promptly sold . . . and all . . . of the limited partners should share on a pro-rata basis in the net proceeds of the sale." Waikoloa also contended that a monetary judgment could not be imposed against it because the commissioner did not find that Waikoloa had engaged in any "wrongdoing."

The chancellor overruled Waikoloa's exceptions and adopted the commissioner's findings "in their entirety." The chancellor additionally held that Waikoloa "must perform its duties under the partnership agreement[s]" and "pay the [minority partners] for their interests in the original partnerships in the amounts [set] by the [c]ommissioner."

Waikoloa filed a motion for reconsideration on the ground that the chancellor's ruling imposed on Waikoloa "the duties, obligations and liabilities of a general partner." The chancellor denied Waikoloa's motion. Waikoloa appeals.

Waikoloa argues that the chancellor's holding contradicts both the plain language of the partnership agreements and the commissioner's finding that "it was the duty of Jane A. Coker as

the remaining general partner to proceed with dispatch to sell or liquidate" the partnerships' assets. Waikoloa asserts that because the majority partners did not exercise their buyout option in 1988, the general partner was required to sell and distribute the partnerships' assets. Waikoloa also contends that Jane Coker's failure to liquidate and sell the partnerships' assets cannot transform Waikoloa's desire to acquire the minority partners' interests under the 1999 appraisal into an obligation to purchase those interests.

In response, the minority partners contend that because Waikoloa asked the chancellor to require the minority partners to sell their interests to Waikoloa, this appeal merely reflects Waikoloa's dissatisfaction with the buyout price fixed by the chancellor. The minority partners also argue that the chancellor did not impose liability on Waikoloa for Jane Coker's breach of duty but properly used the 1991 appraisal to fix the buyout prices based on the uncontested finding that the partnerships dissolved in 1988. We disagree with the minority partners' arguments.

We begin our analysis by examining the language of the partnership agreements, which establishes the parties' contractual rights. When the terms of the parties' contracts are unambiguous, the interpretation of those terms presents a question of law. Musselman v. The Glass Works, L.L.C., 260 Va.

342, 346, 533 S.E.2d 919, 921 (2000); Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C., III, 258 Va. 524, 528, 521 S.E.2d 761, 763 (1999); Gordonsville Energy, L.P. v. Virginia Elec. & Power Co., 257 Va. 344, 352-53, 512 S.E.2d 811, 816 (1999).

We conclude that the language of Paragraph 19 is plain and unambiguous. Therefore, we will construe the contractual terms in accordance with their plain meaning. See Standard Banner Coal Corp. v. Rapoca Energy Co., LP, 265 Va. 320, 325, 576 S.E.2d 435, 437 (2003); Shepherd v. Davis, 265 Va. 108, 118, 574 S.E.2d 514, 520 (2003); Pocahontas Mining Ltd. Liab. Co. v. Jewell Ridge Coal Corp., 263 Va. 169, 173, 556 S.E.2d 769, 771 (2002). Because our interpretation of the contracts presents a question of law, we are not bound by the chancellor's construction of the contractual terms but we independently consider the language contained within the four corners of the parties' agreements. Standard Banner Coal Corp., 265 Va. at 324-25, 576 S.E.2d at 437; Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002); TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002); Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984).

A chancellor's function is to construe the contracts made by the parties, not to make new contracts for them. Standard Banner Coal Corp., 265 Va. at 325, 576 S.E.2d at 437; Cave Hill

9

<u>Corp. v. Hiers</u>, 264 Va. 640, 646, 570 S.E.2d 790, 793 (2002); <u>Wilson</u>, 227 Va. at 187, 313 S.E.2d at 398. In the present case, however, the chancellor deviated from these basic principles and imposed a result that effectively created new partnership agreements for the parties.

The plain language of Paragraph 19 provides that on dissolution, the general partner "shall proceed with dispatch to sell or liquidate the assets of the partnership." Thus, when the partnerships dissolved in 1988 upon Joseph Coker's effective retirement, Jane Coker, as the remaining general partner, became obligated to sell or liquidate the assets of the partnerships.

Jane's failure to take this action did not provide a basis for the chancellor's imposition of a duty on Waikoloa to purchase the minority partners' interests in accordance with the 1991 appraisal of the property. Waikoloa was not a party to the original partnership agreements and was not even in existence at the time the dissolutions occurred in 1988. Since its creation in 1994, Waikoloa was merely a limited partner in Eiwa and Ehiku.

In addition, Waikoloa never assumed the duties of a general partner for any of the dissolved partnerships. Waikoloa's members simply transferred to Waikoloa their interests as limited partners in those original partnerships. Thus, Waikoloa was a successor in interest to certain limited partners of Eiwa

10

and Ehiku, but was not a successor in interest to the partnerships themselves or to the partnerships' general partners.

Because Waikoloa did not assume or acquire the duties of a general partner of the dissolved Eiwa and Ehiku partnerships, Waikoloa had no obligation or authority to act under the terms of Paragraph 19 of those partnership agreements. Thus, we conclude that the chancellor erred in holding that Waikoloa had "duties under the partnership agreement[s]" to "pay the [minority partners] for their interests in the original partnerships."

Our conclusion is not altered by the minority partners' argument that Waikoloa imposed a duty of purchase on itself by pleading that it was willing and able to purchase the minority partners' interests at a purchase price based on the 1999 appraisal. Waikoloa's willingness to purchase the minority partners' interests at the lower prices supported by the 1999 appraisal did not create a legal obligation to act under Paragraph 19 of the Eiwa and Ehiku partnership agreements.

We likewise disagree with the minority partners' contention that the chancellor acted properly because he merely ordered the accomplishment of that which "Jane Coker should have done," thereby ensuring that the minority partners would receive the sums to which they would have been entitled under the 1991

11

appraisal. A chancellor must have a cognizable basis for granting equitable relief and is not authorized to take a particular course of action simply because he thinks that such action is just and appropriate. See Tiller v. Owen, 243 Va. 176, 179, 413 S.E.2d 51, 53 (1992). Here, the chancellor had no cognizable basis under the partnership agreements, partnership law, or otherwise, for imposing a duty of purchase on Waikoloa. Thus, it was error for him to require that Waikoloa pay the amounts fixed by the commissioner under the 1991 appraisal as compensation for the minority partners' interests.

For these reasons, we will affirm that portion of the chancellor's judgment holding that dissolution of the original four partnerships occurred in 1988, and that it was Jane Coker's duty, as the remaining general partner, to sell or liquidate the assets of the partnerships. We will reverse the remainder of the chancellor's judgment, and enter final judgment in favor of Waikoloa.[2]

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and final judgment.</u>

---

[2] Because neither party in its brief in this appeal requested that we remand the case to the chancellor to conduct dissolution proceedings, we do not consider such relief.

12