Present: Lemons, C.J., Goodwyn, McClanahan, Powell, Kelsey, and McCullough, JJ., and Koontz, S.J.

SHAREHOLDER REPRESENTATIVE
SERVICES, LLC, ET AL.
                                                            OPINION BY
v. Record No. 151640                    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                                          October 27, 2016
AIRBUS AMERICAS, INC.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane Marum Roush, Judge

This case involves a contract dispute between the purchaser and the seller of a

corporation pursuant to a corporate merger agreement. As pertinent here, the merger agreement

provided for three different liability limitations ("damage caps") in the event of certain breaches

by the seller. There is no dispute now that the seller breached a number of the requirements of

the merger agreement. Those breaches all involved the seller's failure to use certain generally

accepted accounting principles, as contemplated in the merger agreement, to accurately establish

the financial condition of the seller's corporation and, accordingly, the appropriate adjustment to

the consideration to be paid by the purchaser to the seller. In this regard, the amount of the

adjustment was controlled by the indemnity the purchaser was entitled to receive under the

applicable damage caps. The primary focus of this appeal is whether the circuit court properly

construed the merger agreement as to which damage cap was controlling under the demonstrated

facts of the case.

BACKGROUND

Metron Aviation, Inc. ("Metron Aviation"), which in 2010 was a wholly-owned

subsidiary of Metron Holdings, Inc. ("Metron"), is the developer of Metron Traffic Flow, a

software program for air traffic control systems. On April 29, 2010, Metron Aviation entered

into a five-year contract with Airservices Australia ("ASA"), a corporation chartered by the

Australian government, which is the equivalent of the United States' Federal Aviation Administration. The contract required Metron Aviation to install and support Metron Traffic Flow at ASA facilities. Under the terms of the contract and subsequent revisions, Metron Aviation was obligated to provide additional functionality and updates through 2015, with ASA having an option to extend the contract.

On July 25, 2011, Airbus Americas, Inc. ("Airbus"), a Delaware corporation, which has its principal office in Herndon, Virginia, entered into a merger agreement with Metron. Shareholder Representative Services, LLC ("SRS") acted as agent for the stockholders of Metron.[1]

The amount to be paid by Airbus to Metron at closing was subject to an adjustment of the $75,000,000 purchase price based on Metron's financial condition at the time of the merger. To determine this adjustment, three business days prior to the closing date Metron was required to prepare a "Consideration Spreadsheet," as defined in Section 2.15 of the parties' Agreement and Plan of Merger, based on its most recent financial statements and current operating assets and liabilities. Metron warranted that its corporate accounting practices adhered to generally accepted accounting principles, or "GAAP," as required by Section 3.7 of the merger agreement.[2]

As required in Section 3.10, Metron warranted that it had "no liabilities, indebtedness, claims, deficiencies, expenses, guarantees or other obligations of any nature (matured or

---

[1] In the action subsequently filed by Airbus, these former stockholders – individuals, trusts, and corporate entities – were named as defendants and are parties to this appeal as they were found by the circuit court to be liable individually in proportion to their ownership interests. Hereafter, in context, we will refer to Metron Holdings, Inc. and these stockholders collectively as "Metron."

[2] The designations of sections that follow all refer to sections of the merger agreement.

unmatured, accrued or unaccrued, fixed or contingent) required to be reflected, reserved against or otherwise disclosed in or on the Company Financial Statements prepared in accordance with GAAP." Section 3.28(c) further provided a warranty that neither Metron nor its subsidiary was "a party to any Government Contract which is reasonably expected to result in a loss" to Metron or its subsidiary.

Pursuant to the requirement of Section 9.1, at closing the parties established an escrow fund, as defined in Section 2.6(a)(ii), securing Airbus for indemnification of any inaccuracies or breaches of Metron's representations and warranties up to $5.8 million. Under Section 9.2(a), the escrow fund was to be held for a period of sixteen months after the closing date, at which time all representations and warranties made by Metron, with certain exceptions not at issue here, would expire. Section 9.2(b), in relevant part, provided that Airbus would "be entitled to be indemnified for Damages[3] actually Incurred . . . as a result of (i) any breach of, or inaccuracy in, any representation or warranty by [Metron, and] . . . (iv) any inaccuracy in the Consideration Spreadsheet."

Except for acts of fraud or willful misconduct, Section 9.2(c)(iii)(A) established Metron's maximum liability for "breaches of all representations and warranties other than Fundamental Representations and Special Representations . . . in the aggregate, to payment from the [$5.8 million] Indemnity Portion of the Escrow Fund" (the "escrow cap"). Liability for breaches of "Fundamental Representations and Special Representations" was capped at $15 million by Section 9.2(c)(iii)(B) (the "special representations cap"). For any other breach not subject to either of these caps, under Section 9.2(c)(iii)(C) Metron was required to indemnify Airbus up to

---

[3] Damages were defined to include "reasonable legal, expert, and consultant fees and expenses."

"100% of the total merger consideration" actually received by Metron under the merger agreement, which was approximately $55 million (the "merger consideration cap").

The closing of the merger was held on October 18, 2011. Airbus then tendered the amount required as stated in the Consideration Spreadsheet prepared by Metron.

After the merger, Metron Aviation, then a subsidiary of Airbus, continued to work on developing and upgrading Metron Traffic Flow as required by the ASA contract. In 2012, Airbus became concerned that Metron Aviation was not performing as expected, and following an internal audit determined that the estimated cost to complete the ASA contract would significantly exceed its expected revenue.

Airbus also determined in its audit that Metron's pre-merger financial reports and operating accounts were, in the auditor's opinion, not in accord with GAAP. Essentially, the auditor concluded that payments noted by Metron under the ASA contract and cost for future upgrades and maintenance required under the contract had not been properly characterized as liabilities under a "loss making contract." Consequently, Airbus maintained that it was entitled to deduct the amount of these liabilities from the amount of the merger consideration due under the merger agreement.

### PROCEEDINGS

On January 24, 2014, Airbus filed a complaint in the Circuit Court of Fairfax County seeking indemnification from Metron in the amount of $17.3 million in addition to attorney's fees and reasonable costs and expenses for breaches of Sections 3.7, 3.10, and 3.28(c). Airbus subsequently sought and was granted leave to file an amended complaint dated November 12, 2014.

In the amended complaint, Airbus again asserted that by failing to follow GAAP in not characterizing the revenue and future costs associated with the ASA contract as liabilities, Metron was in breach of Sections 3.7, 3.10, and 3.28(c). Airbus alleged that as a result, the merger consideration due at closing, as calculated in the Consideration Spreadsheet, failed to reflect $18.1 million in liabilities for which it was entitled to indemnification. Airbus asserted for the first time that Metron was required to indemnify Airbus under the merger consideration cap in addition to the escrow cap. Thus, Airbus contended that it was entitled to full indemnification for its alleged damages.

In its answer to the amended complaint, Metron denied any liability. Metron also filed a motion for summary judgment and supporting memorandum in which, in relevant part, it asserted that Airbus' claims were in any event all subject to the escrow cap rather than the merger consideration cap. The circuit court did not address the motion for summary judgment prior to trial.

The ensuing twelve-day bench trial produced a voluminous record, with both lay and expert testimony focused primarily on the proper classification of Metron's revenues and obligations under the ASA contract and whether Metron adhered to GAAP in its treatment of the contract. Because the circuit court's findings on those issues in favor of Airbus are not challenged on appeal, we need not recount the evidence in support of those findings.

In calculating the damages suffered as a result of Metron's breaches of the merger agreement, the circuit court found that the Consideration Spreadsheet was inaccurate and awarded Airbus $5.8 million for Metron's failure to account for the loss making contract with ASA and $3,614,700 for not classifying the income received from ASA under the contract as a liability. In sum, the circuit court fixed Airbus' damages at $9,414,700 and determined that

5

Airbus was entitled to the entire escrow fund and a money judgment against Metron in excess of the amount of the escrow fund.

Airbus filed a post-trial motion for an award of attorney's fees and costs under the fee shifting provision of the merger agreement. Metron opposed the motion, asserting that Airbus had failed to take steps to avoid unnecessary and protracted litigation, as required by the fee shifting provision.

In a final order dated July 30, 2015, the circuit court, adopting by reference the rationale of a June 2, 2015 opinion letter, entered final judgment for Airbus, awarding it $9,414,700. The court also awarded Airbus $3,864,835 in attorney's fees and costs. We awarded SRS and the former Metron stockholders (hereinafter, collectively, "SRS") this appeal.

## DISCUSSION

In this appeal, SRS raises the following assignments of error:

(1) The [circuit] court erred as a matter of contract interpretation in failing to apply the $5.8 million contractual cap on damages for breaches of [Sections] 3.7 and 3.10 of the Merger Agreement because the damages awarded in excess of $5.8 million arose entirely from errors that were subject to the cap.

(2) The [circuit] court erred as a matter of law in awarding damages in excess of the $5.8 million escrow [cap] because the "Consideration Spreadsheet" violation giving rise to those damages was untimely asserted under the contractual limitation period.

Because we conclude that the issue raised in SRS' first assignment of error is dispositive, we need not address the issue raised in the second assignment of error. *See City of Chesapeake v. Dominion Security Plus Self Storage, L.L.C.*, 291 Va. 327, 336, 785 S.E. 2d 403, 407 (2016) (a dispositive assignment of error obviates any need to address other assignments of error) (collecting cases).

6

*Preservation of Issue*

Initially, we note that Airbus contends SRS failed to timely assert the application of the escrow cap in the circuit court to damages arising from the inaccuracies in the Consideration Spreadsheet after this claim was asserted in the amended complaint. Rather, Airbus maintains that SRS first sought to apply the escrow cap to these damages only in a motion for reconsideration after the circuit court had issued its opinion letter. Despite the court not having entered final judgment prior to ruling on the motion for reconsideration, Airbus maintains that because it had made its position clear that it viewed these damages as subject only to the escrow cap, SRS was barred from raising the issue of which cap applied after the court announced its intended judgment in the opinion letter. Thus, Airbus concludes that the court would have been within its discretion to reject SRS' assertions as not raised in a timely manner. *Scialdone v. Commonwealth*, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010); *see also Weidman v. Babcock*, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991); *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 403-04, 337 S.E.2d 744, 749 (1985). Additionally, Airbus contends that even if the issue is properly before us on appeal, it should be reviewed under an abuse of discretion standard.

SRS responds that it was not required to assert the application of the escrow cap prior to its motion for reconsideration. SRS maintains that because SRS denied any liability to Airbus under any theory, including the claim based upon inaccuracies in the Consideration Spreadsheet, it was not required to assert the application of the escrow cap to the damages unless, and until, the court found SRS to be liable in excess of $5.8 million.[4]

---

[4] SRS also contends that Airbus' procedural arguments are barred by its failure to raise them in its brief in opposition to SRS' petition for appeal. We have never before held that an

7

Airbus' reliance on the contemporaneous objection rule in this case is misplaced. The purpose of the rule is to assure "that the trial court is provided an opportunity to rule intelligently" on an objection or procedural issue raised by a party. *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 396, 732 S.E.2d 676, 683 (2012) (internal quotation marks omitted). When the issue concerns a matter of law, an objection will be timely so long as it is raised in a manner that gives the trial court sufficient notice of the argument and time to rule intelligently on the issue while the case remains under the court's jurisdiction, even if raised for the first time in a post-trial motion. *See, e.g., Majorana v. Crown Cent. Petroleum Corp*., 260 Va. 521, 525 n.1, 539 S.E.2d 426, 428 n.1 (2000); *Luckett v. Jennings*, 246 Va. 303, 306, 435 S.E.2d 400, 401 (1993).

It is well-established that a court speaks only through its written orders. *Temple v. Mary Washington Hosp.*, 288 Va. 134, 141, 762 S.E.2d 751, 754 (2014) (collecting cases). At the time SRS filed its motion for reconsideration, the circuit court had not entered a final order memorializing the rulings in its opinion letter. Thus, at the time SRS filed its motion for reconsideration, the court had not awarded Airbus any damages.

The motion for reconsideration properly raised the issue whether the damages to be awarded by the court's order should be capped in accord with the escrow cap. In ruling on that motion, the court stated that it had carefully considered SRS' assertions. The record is clear that the court had both notice of the legal issue raised in SRS' motion for reconsideration and an opportunity to rule intelligently on that issue. *Scialdone*, 279 Va. at 437, 689 S.E.2d at 724.

_____

appellee waives any argument, either procedural or on the merits, by failing to appear and assert it in response to a petition for a writ of error. We decline to adopt such a rule now.

8

Accordingly, we hold that SRS' first assignment of error is properly before us in this appeal as a question of contract law to be reviewed de novo.

*Application of the Escrow Cap*

The essential assertions of SRS in this appeal may be fairly summarized in the following manner. SRS correctly notes that it is now undisputed that the breaches of the merger agreement all arose from Metron's failure to adhere to GAAP, as required by Sections 3.7 and 3.10, in preparing all financial documents for the consummation of the merger. SRS maintains, therefore, that because the failure to adhere to GAAP constitutes a "breach[] of . . . representations and warranties other than Fundamental Representations and Special Representations," the damages recoverable by Airbus are limited to the $5.8 million escrow cap as provided by Section 9.2(c)(iii)(A).[5] Specifically with regard to the provisions concerning damages for inaccuracies in the Consideration Spreadsheet as provided in Section 9.2.(b)(iv), SRS maintains that Section 9.2(c)(iii)(C), by its express terms, is limited to damages recoverable by Airbus "that are not subject to the limitations described in Section 9.2(c)(iii)(A)."

Similarly, the position of Airbus may be fairly summarized in the following manner. Airbus maintains that under the plain language of Section 9.2(c)(iii), the only cap that applies to the indemnification for inaccuracies in the Consideration Spreadsheet is subsection (C) because subsections (A) and (B) do not include indemnity obligations under Section 9.2(b)(iv). Additionally, Airbus maintains that Section 10.6, which in pertinent part provides that all remedies "will be deemed cumulative with, and not exclusive of, any other remedy conferred hereby" permits the application of the Section 9.2(c)(iii)(A) cap to the damages attributable to

_____

[5] Special Representations, addressed in Section 9.2(c)(iii)(B), are not at issue in this appeal.

9

accounting inaccuracies generally, as well as the Section 9.2(c)(iii)(C) cap to damages attributable to inaccuracies in the Consideration Spreadsheet, even though all of Airbus' damages resulted from Metron's failure to adhere to GAAP.

We begin our analysis of SRS' first assignment of error by noting what issues are not before us. First, the circuit court's calculation of approximately $9.4 million in damages to Airbus is not contested. Likewise, the court's determination that Airbus was entitled to approximately $3.8 million in reasonable and appropriate attorney's fees and costs is not contested by SRS. However, SRS maintains, and Airbus conceded at oral argument of this appeal, that because the merger agreement defines the award of attorney's fees and costs as "damages" arising from the breach of the merger agreement, if liability for all damages is capped at $5.8 million, this would preclude Airbus from recovering more than that amount. Accordingly, the issue before us is simply whether Airbus can recover all its damages, or only the $5.8 million allowed under the escrow cap.

Section 10.7 specifies that the merger agreement is to be construed according to Delaware law. And we have stated that "[i]f a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *Settlement Funding, LLC v. Neumann-Lillie*, 274 Va. 76, 80, 645 S.E.2d 436, 438 (2007). We note, however, that with respect to the rules of contract interpretation applicable here, Delaware law and Virginia law are entirely consonant.

Our analysis is guided by well-established principles of appellate review in contract dispute cases. "It is the function of the court to construe the contract made by the parties, not to make a contract for them. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. No word or clause in a contract will be treated as

10

meaningless if a reasonable meaning can be given to it and the parties are presumed not to have included needless words in a contract." *Standard Banner Coal Corp. v. Rapoca Energy Co.*, 265 Va. 320, 325, 576 S.E.2d 435, 437 (2003) (internal quotation marks and citations omitted). Because we have an equal opportunity to consider the language of the merger agreement, we will review de novo the circuit court's interpretation of its language. *Schuiling v. Harris*, 286 Va. 187, 192, 747 S.E.2d 833, 836 (2013).

The parties do not dispute that the terms of the merger agreement at issue here are unambiguous. As indicated above, there is no dispute that Metron's failure to adhere to GAAP was the origin of the damages to Airbus from the inaccuracies relating to the revenue and expected future development costs of the ASA contract as well as the inaccuracies in the Consideration Spreadsheet.

Section 9.2(c)(iii) expressly limits or "caps" the indemnity obligations of the seller (SRS) for damages to the buyer (Airbus) resulting from the seller's breaches of the merger agreement. While Section 9.2(c)(iii) provides for different caps in subsections (A), (B), and (C), the plain language of this section does not contemplate that more than one of these caps would be applicable where, as here, the damages of the party entitled to indemnity all result from the same conduct of the party required to provide that indemnity. Rather, the cap in each subsection carefully defines a set of breaches to which it will apply.

The failure of Metron to adhere to GAAP was a breach of "representations and warranties" as contemplated in Section 9.2(c)(iii)(A) and the damages to Airbus were accordingly limited to the $5.8 million escrow fund. The failure to adhere to GAAP undoubtedly materially affected the calculation of Metron's financial condition, as reflected in the Consideration Spreadsheet, that was used to determine the appropriate adjustment to the

11

consideration to be paid by Airbus at the closing of the merger agreement. Section 9.2(c)(iii)(C), however, expressly excludes indemnity obligations for all damages arising under "the limitations described in Section 9.2(c)(iii)(A)." Under the particular facts of this case, to conclude that Section 9.2(c)(iii)(C) permits Airbus to recover damages in excess of the escrow cap by asserting inaccuracies in the Consideration Spreadsheet would effectively render the limitation on damages under Section 9.2(c)(iii)(A) meaningless. Such an interpretation is foreclosed by well-established principles of contract interpretation. *See*, *e.g., Standard Banner Coal Corp.,* 265 Va. at 325, 576 S.E.2d at 437; *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 & n.17 (Del. 2010) (observing that under Delaware law, courts "will not read a contract to render a provision or term 'meaningless or illusory'"); *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) (observing that "[u]nder general principles of contract law, a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless").

## CONCLUSION

For these reasons, we hold that the circuit court erred in not limiting SRS' liability to indemnify Airbus for damages to the $5.8 million amount set by the escrow cap. Accordingly, we will reverse the judgment of the court and enter final judgment for Airbus in that amount.

*Reversed and final judgment.*