PRESENT: All the Justices

MARY BETH DIXON, ET AL.

v. Record No. 170350

DONNA SUBLETT

OPINION BY
JUSTICE CLEO E. POWELL
February 22, 2018

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Michelle J. Atkins, Judge

This appeal arises from a medical malpractice action in which a jury rendered a verdict in favor of the patient, Donna Sublett, and against Mary Beth Dixon, M.D., Women Care Centers, PLC and Mid-Atlantic Women's Care, PLC (collectively "Dixon"). Dixon argues that the Circuit Court of the City of Norfolk ("circuit court") erred in denying her motion to strike Sublett's evidence on the basis that Sublett failed to prove causation. Dixon also argues that the circuit court erred in admitting medical bills into evidence without sufficient foundation.

I. BACKGROUND

In 2012, Sublett consulted with Dr. Dixon and made the decision to undergo a laparoscopic total hysterectomy. At trial, Dr. Dixon testified she met with Sublett and explained the risks and benefits of the laparoscopic procedure, including that placement of trocars[1] carries

---

[1] Trocars are instruments with a hollow tube/sleeve through which the laparoscope and ligature/cautery device, and other necessary instruments, are inserted into the abdomen. *See, e.g.*, Laparoscopic.MD, "Trocar" (2017), http://www.laparoscopic.md/surgery/instruments/trocar (last visited February 6, 2018) (explaining that "[i]n its simplest form, a trocar is a pen-shaped instrument with a sharp triangular point at one end, typically used inside a hollow tube, known as a cannula or sleeve, to create an opening into the body through which the sleeve may be introduced, to provide an access port during surgery").

many risks because it is "almost a blind part of the procedure." Sublett acknowledged the inherent risks and consented to the surgery.

On June 4, 2012, Dr. Dixon and her partner, Dr. G. Theodore Hughes, performed the procedure. Dr. Dixon explained, as noted in the operative report, that Dr. Hughes placed "the initial trocar though the belly button" at which point the trocar "appeared to be very close to the omentum."[2] The trocar had to be pulled back but "no apparent injury was noted to the omentum or the bowel." Dr. Dixon further explained how she performed the surgery and that once she removed the uterus and cervix she looked for any injury while the abdomen was deflated and then "went back and . . . put the gas back inside the abdomen and looked around . . . to make sure there was no bleeding or anything abnormal that shouldn't be there." She said she was "comfortable that there was no injury to the bowel."

On June 5, Dr. Dixon saw Sublett six times because Sublett was experiencing pain, shortness of breath, and difficulty passing urine. Dr. Dixon testified that pain was expected after such a surgery, but that she called for consultations with a pulmonologist, urologist, nephrologist, and a hospitalist. On the morning of June 6, Sublett's symptoms had not resolved and Dr. Dixon ordered a CT scan of Sublett's pelvis and abdomen. Dr. Dixon went off duty, but shifted Sublett's care to Dr. Hughes. Dr. Hughes informed Dr. Dixon later that day that Dr. Barrett, a general surgeon, had performed an open surgery on Sublett and identified and repaired a bowel injury.

---

[2] The omentum is a fatty organ that lays on top of bowel. *See, e.g.*, Laparoscopic.MD, "Omentum" (2017), http://www.laparoscopic.md/digestion/omentum (last visited February 6, 2018) (explaining that the omentum "is a membranous double layer of fatty tissue that covers and supports the intestines and organs in the lower abdominal area," which is comprised of two distinct portions: the "greater omentum," which is "an important storage for fat deposits," and the "lesser omentum," which "connects the stomach and intestines to the liver").

At trial, Sublett alleged Dr. Dixon negligently perforated Sublett's small bowel during the laparoscopic total hysterectomy[3], failed to detect the perforation, and failed to obtain a general surgery consultation to repair the injury. She alleged that Dr. Dixon's negligence proximately caused, and would continue to cause, her great pain and suffering and medical expenses.

Sublett called Dr. Barrett to testify as a treating physician pursuant to Code § 8.01-399. Dr. Barrett evaluated Sublett. At trial, she explained her consultation and operative reports, noting that the CT scan that Dr. Dixon ordered did not conclusively demonstrate any bowel injury, but that bowel injury was high on Dr. Barrett's differential diagnosis, as was a ureteral injury given Sublett's acute renal failure. Dr. Barrett performed laparoscopic exploratory surgery in an attempt to find and repair the bowel injury. She was unable to identify a hole, but discovered that intestinal contents had leaked outside the bowel into the abdominal cavity. Dr. Barrett converted the laparoscopic procedure into an open surgery and removed the perforated portion of the bowel, resected it, and irrigated the abdominal cavity to remove the contamination.

Sublett presented expert testimony from Dr. Jeffrey Soffer, an OB/GYN physician, who testified that the standard of care required Dr. Dixon to recognize the bowel injury before concluding the surgery on June 4 and to consult a general surgeon so that the injury could be immediately repaired. He acknowledged that Dr. Dixon looked for injury, but testified that:

> As standard of care dictates, she had an obligation to carefully inspect, as I mentioned before, all surrounding structures, specifically the small intestine, and when I say inspected, I mean not just look at it but take your laparoscopic instruments, put them inside, turn the bowel upside down, look at it from every angle. As I said, if it takes some extra time to do that, you do it. That is your obligation to the patient.
>
> If she had done it correctly and diligently, she would have noted that there was a hole. She would have noted that there was

---

[3] At trial, Sublett abandoned her claim that Dr. Dixon was negligent in causing the bowel perforation. That issue is not before the Court on appeal.

bowel content or liquid feces coming out of this hole. . . . She certainly would have called one of her general surgical colleagues because this happens all the time where you notice something is wrong.

Sublett attempted to elicit testimony from Dr. Soffer regarding his opinions as to how a general surgeon would have repaired the injury. First, Dr. Soffer testified that Dr. Dixon could have called a general surgeon "in two days earlier. . . and they attempt to fix this perforation, and it most likely would have been fixed laparoscopically." The circuit court sustained Dr. Dixon's objection to this statement. Counsel for Sublett again tried to elicit testimony from Dr. Soffer that a general surgeon would have repaired the injury laparoscopically. Dr. Dixon again objected noting that Dr. Soffer was "proffered for the one thing, to talk about Dr. Dixon and the standard of care in failing to recognize this injury. Now we are talking about a repair procedure which he hasn't been qualified to do and says he would call a general surgeon to have him do it, and it is outside the scope of his expertise." Sublett argued that Dr. Soffer's expert witness designation went directly to the issue of the treatment of Sublett, which would include how the general surgeon would have repaired the injury. The circuit court sustained Dr. Dixon's objection finding that "[i]t is beyond what he is proffered for. He has testified to one thing. He was offered for one thing. Now he was attempting to get into how it could have been done, how it would have been done, and that is beyond [the designation]."

Thereafter, Dr. Soffer was only allowed to testify that, in his opinion, had Dr. Dixon discovered the bowel injury, she should have immediately consulted a general surgeon. Sublett also sought to elicit testimony from Dr. Soffer as to the timing of the repair. In response to a question from Sublett's attorney as to the significance of a consult, Dr. Soffer testified, "[c]ertainly if you have a consultation intraoperatively, immediately, it can be fixed at that time." Again, Dr. Dixon objected to this testimony as being outside Dr. Soffer's expertise. The trial

4

court sustained the objection. Sublett did not present any other witness testimony regarding how a general surgeon would have addressed a bowel injury.

Dr. Soffer also testified that Sublett's medical bills were customary and reasonable for the care Sublett received. Dr. Dixon stipulated that the bills were customary and reasonable as to the amounts, but objected to the admission of the bills for lack of a proper foundation, arguing that pursuant to *McMunn v. Tatum,* 237 Va. 558, 379 S.E.2d 908 (1989), expert testimony was required to establish that the medical bills were rendered necessary solely because of Dr. Dixon's alleged negligence. She added that Dr. Soffer was neither designated to nor did he testify that the medical bills were causally related to any negligence by Dr. Dixon, which was obvious because the doctor admitted to seeing the medical bills for the first time at trial. The circuit court overruled Dr. Dixon's objections and admitted the medical bills into evidence.

In her defense, Dr. Dixon presented evidence from two OB/GYN experts, Dr. Hicks and Dr. Armstrong. These experts opined that Dr. Dixon's inspection for a bowel injury met the standard of care because a bowel injury may be too small to immediately see because the bowel is relatively empty in preparation for surgery. As a result, any injury or leakage may not manifest until 24 hours after surgery.

The circuit court denied Dr. Dixon's motion to strike the evidence at the end of Sublett's case-in-chief as well as Dr. Dixon's renewed motion to strike at the close of all evidence. In her motions, Dr. Dixon restated her arguments regarding the erroneous admission of the medical bills due to lack of proper expert foundation. Dr. Dixon further argued that Sublett failed to present any evidence of causation. Specifically, Sublett failed to prove that anything different would have happened even if Dr. Dixon had discovered the bowel injury during surgery on June 4 and had immediately consulted a general surgeon, or that Sublett would not have needed the

exact same treatment that she actually received. Therefore, Dr. Dixon argued, the jury was left to speculate as to causation. Dr. Dixon also asserted that Dr. Soffer's testimony was speculative and failed to prove there was any injury for Dr. Dixon to visualize on June 4. Specifically, Dr. Soffer's testimony that the perforation was a cautery injury was based only on Dr. Smith's testimony that cautery artifacts were noted on the excised portion of the bowel. However, Dr. Smith could not say when the cautery marks were made, only that it was sometime between June 4 and June 6.

The jury returned a verdict in Sublett's favor. The circuit court entered judgment on the jury's verdict for Sublett in which it awarded her $652,000 in damages. This appeal followed.

## II. ANALYSIS

> A plaintiff who is "[a]rmed with a jury verdict approved by the trial court, . . . stands in 'the most favored position known to the law.'" *Bitar v. Rahman*, 272 Va. 130, 137, 630 S.E.2d 319, 323 (2006) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57, 419 S.E.2d 627, 630 (1992)). When a trial court has refused to strike a plaintiff's evidence or to set aside a jury verdict, the well-established standard of appellate review requires this Court to determine whether the evidence presented at trial, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff. *Id*. at 141, 630 S.E.2d at 325-26. We will not set aside a trial court's judgment sustaining a jury verdict unless it is "plainly wrong or without evidence to support it." Code § 8.01-680; *see also Bitar*, 272 Va. at 137, 630 S.E.2d at 323.

*Fruiterman v. Granata*, 276 Va. 629, 637, 668 S.E.2d 127, 132 (2008).

On appeal, Dr. Dixon argues Sublett failed to prove medical malpractice and produce any evidence of causation. Therefore, Dr. Dixon argues that the circuit court erred in not granting her motion to strike the evidence, in submitting the case to the jury, and in not setting aside the jury's verdict. Concluding that Sublett failed to present any evidence of causation, we will

6

reverse the circuit court's judgment implementing the jury verdict and enter final judgment for Dixon.

> A physician is neither an insurer of diagnosis and treatment nor is the physician held to the highest degree of care known to the profession. The mere fact that the physician has failed to effect a cure or that the diagnosis and treatment have been detrimental to the patient's health does not raise a presumption of negligence.

*Bryan v. Burt*, 254 Va. 28, 34, 486 S.E.2d 536, 539 (1997). "In medical malpractice cases, as in other negligence actions, the plaintiff must establish not only that the defendant violated the applicable standard of care, and was therefore negligent, he must also sustain the burden of showing that the negligent acts constituted a proximate cause of the injury or death." *Brown v. Koulizakis*, 229 Va. 524, 532, 331 S.E.2d 440, 446 (1985).

Dr. Soffer qualified as an expert witness and testified that in his opinion, "there was negligence and substandard care delivered by Dr. Dixon in failure to recognize that this injury to her bowel had occurred and to take steps to repair it." He opined that Dr. Dixon did not properly inspect Sublett's bowel after the surgery by using a laparoscope to turn the bowel upside down and inspect the bowel from every angle. Dr. Soffer also testified that Dr. Dixon should have immediately contacted a general surgeon when she noticed the injury to the bowel. This constituted evidence from which, if believed, the jury could have reasonably found that Dr. Dixon breached the standard of care.

However, Sublett failed to present any testimony from an expert witness to identify what a general surgeon would have done if immediately consulted about the perforated bowel. Sublett also failed to present any expert testimony on whether her outcome would have been any different had a general surgeon been immediately consulted.

This case is similar to *Bryan* where the Court found that

> [a]ffording the plaintiff benefit of all possible inferences, one could infer from the events of the 14th that, if the condition had been properly diagnosed on the 13th, the decedent would have been referred to a surgeon who would have been responsible for her care. But the record is silent about the details of that care and its possible effect on the patient's health.

*Bryan*, 254 Va. at 35, 486 S.E.2d at 540. The Court went on to distinguish the facts of *Bryan* from other medical malpractice cases.

> This case is unlike *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 377 S.E.2d 589 (1989); *Brown*, [229 Va. at 532, 331 S.E.2d at 446]; and *Whitfield v. Whittaker Mem'l Hosp.*, 210 Va. 176, 169 S.E.2d 563 (1969). . . . In each of those cases, holding proximate cause to be a jury issue, the plaintiff presented testimony to establish the nature of the treatment the decedent could have undergone had the diagnosis been correct and the probability that such treatment would have extended the decedent's life.

*Id.*

In *Bryan*, like the case at bar, the plaintiff failed to present sufficient evidence to prove causation. Here, as in *Bryan*, the record before the Court is silent about the details of the care a general surgeon would have provided had the perforated bowel been diagnosed on June 4 instead of June 6. There is no evidence that the repair would have been performed immediately on June 4 as opposed to June 6. Further, there is no evidence that the repair could have been performed laparoscopically as opposed to an open surgery had a general surgeon been consulted earlier. The record is also silent as to the possible effects on Sublett's health. There is no testimony that she would not have experienced any leaking of the bowel fluids into her abdomen or that she would not have suffered from any infection. Sublett did not prove causation and was unable to do so from the evidence presented to the circuit court. The circuit court should have granted

8

Dixon's motion to strike the evidence on the basis of lack of causation.  Accordingly, we find

that the circuit court erred in refusing to grant the motion to strike the plaintiff's evidence.[4]

### III.  CONCLUSION

The circuit court erred in denying Dixon's motion to strike Sublett's evidence on the

ground that Sublett failed to prove causation in this medical malpractice action.  We thus reverse

the judgment of the circuit court and enter final judgment for Dixon.

*Reversed and final judgment*.

---

[4] Because we find that the circuit court erred in refusing to grant Dr. Dixon's motion to strike Sublett's evidence, we need not address the assignment of error relating to the admission of the medical bills into evidence.  *See Commonwealth v. White*, 293 Va. 411, 419, 799 S.E.2d 494, 498 (2017) (recognizing that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (alteration and citation omitted)); *see also Shareholder Representative Servs. v. Airbus Americas, Inc*., 292 Va. 682, 689, 791 S.E.2d 724, 727 (2016) (concluding that a dispositive assignment of error obviates any need to address other assignments of error).