# COURT OF APPEALS OF VIRGINIA

## Record No. 0479-25-4

RICHARD PERL

v.

TRACY C. PERL

Present: Judges Beales, Raphael and Bernhard

Argued at Arlington, Virginia

Opinion Issued May 12, 2026[*]

### FROM THE CIRCUIT COURT OF STAFFORD COUNTY
J. Bruce Strickland, Judge

Mary Elizabeth White (Law Offices of Mary Elizabeth White, P.C., on brief), for appellant.

Maryse C. Allen (Compton & Duling, L.C., on brief), for appellee.

### MEMORANDUM OPINION BY
### JUDGE RANDOLPH A. BEALES

Richard Perl (husband) appeals the Circuit Court of Stafford County's order modifying its earlier Qualified Domestic Relations Order (QDRO). Husband argues that the circuit court erred (1) by improperly adding a term or benefit to the QDRO by awarding Tracy Perl (wife) a share of his Deferred Retirement Option Program (DROP) benefits, (2) by not reducing its award by the amount counsel claimed husband had paid in taxes on the amount he was ordered to pay wife, and (3) by awarding wife $8,000 in attorney fees at trial. Wife assigns cross-error, arguing that the circuit court erred (1) by declining to award interest on the award to wife and (2) by declining to award sufficient attorney fees.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

The parties married in 1994, had three children together, and divorced in October 2014.[2] Husband joined the Fairfax County Police Department in October 1998, and he retired in January 2023. After retiring, husband entered a Deferred Retirement Option Program, under which he continued working for the Fairfax County Police Department and began receiving his pension payments into a DROP account that could not be accessed immediately. From January 2023 to June 2023, husband received monthly payments into his DROP account, which he received in lump sum when he exited from the DROP and stopped working in July 2023. Husband then transferred the funds into a private retirement account.

On October 15, 2014, the Circuit Court of Stafford County entered a final decree of divorce. The divorce decree court ordered that wife "be awarded one half of the marital share of both [husband's] police pension fund and defined benefit plan." It also provided that "this matter shall remain open for the entry of retirement orders pursuant to Virginia Code § 20-107.3(k)."[3]

On March 18, 2016, the circuit court entered a QDRO. The QDRO provided, "50% of the marital share of the member's [husband's] retirement benefits and allowances to be paid by Fairfax County Police Officers Retirement System ("the System"), is assigned to the alternate payee [wife]." The QDRO further provided, "When and if the member retires or otherwise becomes

_____

[1] "We view the facts in the light most favorable to the prevailing party below, granting to it the benefit of any reasonable inferences." *Wyatt v. Wyatt*, 70 Va. App. 716, 718 (2019) (citing *Hall v. Commonwealth*, 55 Va. App. 451, 453 (2009)).

[2] While the children were minors at the time of the divorce decree in 2014, they had reached majority by the time wife sought a modification of the QDRO in 2023.

[3] Code § 20-107.3(K) gives the circuit court "continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered" under Code § 20-107.3. This Code section expressly authorizes a circuit court to modify an order "intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits" in order to "effectuate the expressed intent of the [original] order." Code § 20-107.3(K)(4).

entitled to receive his benefits, the parties will compute the amount of monthly benefits to which the alternate payee [wife] shall be entitled in accordance with the formula set forth herein. The parties shall obtain the entry of a modification order."

On September 8, 2023, after learning that husband had retired, wife sought such a modification. In a motion to modify the QDRO, wife asked for "50% marital share of the retirement benefits related to [husband's] police pension fund and defined benefit plan." She argued that husband had not paid her the 50% marital share of his police pension fund and defined benefit plan payments as the divorce decree and 2016 QDRO required. Husband opposed modification of the QDRO, arguing that the DROP payments had not previously been identified, requested, or ordered.

On August 8, 2024, by letter opinion, the circuit court held that wife "was entitled to her share of retirement beginning on January 13, 2023 when [husband] enrolled in DROP." The circuit court found that, in its 2016 QDRO, the court intended to divide husband's retirement and award wife her marital share. The circuit court noted that the divorce decree referred to a "police pension fund and defined benefit plan," and the QDRO identified the "member's retirement benefits and allowances." The circuit court further noted that, in closing arguments in the divorce case, husband referenced a "pension, which is a defined benefit plan." The circuit court found that the "evidence shows that Defendant [husband] was in fact receiving the same benefits from his pension fund albeit in a different manner." The circuit court held that husband's DROP funds derived from his normal retirement benefits and that employees who enroll in the DROP program "are not getting additional or different benefits from a different source." After ruling on the merits, the circuit court stated that "this litigation was protracted and overly contentious" and that "each party took a position that was inflexible and rigid, even in the face of options presented by the other side to compromise, settle, or otherwise resolve parts of the case." The circuit court concluded that equity demanded husband pay

- 3 -

wife $8,000 of her attorney fees. The circuit court ordered the parties to "draft a new QDRO which encompasses the Court's ruling herein."

The parties could not agree to the terms of the new QDRO so the circuit court set another hearing. On October 28, 2024, at that hearing, husband's counsel argued that any taxes he had paid on wife's share should be deducted from what he owed her.

The same day, the circuit court entered an order modifying the QDRO, awarding wife 24.67% of the DROP funds, which was half of the marital share of the DROP. The circuit court also entered another order, in which it rejected husband's argument that his tax payments should reduce wife's share of the DROP. The circuit court found that the evidence presented was insufficiently clear as to how much husband had paid in taxes, and the court declined to speculate on whether husband's proposed downward adjustment of the payment to wife, based on how much he had paid in tax, was accurate. Instead, the court suggested that husband "may refile an amended tax return for 2023 now that the issue has been decided and his actual income for 2023" would be reduced (as his taxes owed also presumably would be reduced). The circuit court declined to award wife interest, stating that "the Court does not believe equity merits inclusion of interest" because "interest would amount to a sanction and is not warranted."

Husband now appeals to this Court. Wife assigns cross-error, and both parties seek an award of their appellate attorney fees.

ANALYSIS

I. DROP Benefits

In his first assignment of error, husband argues that the trial court violated Rule 1:1 by finding that Code § 20-107.3(K) "allowed the Court to add a benefit when that benefit was not

- 4 -

pled, requested, argued[,] or reflected in any writings prior to the instant Motion to Modify, filed ten years after the conclusion of the divorce case."

"It is well-established that a court speaks only through its written orders." *Johnson v. Johnson*, 72 Va. App. 771, 779 (2021) (quoting *S'holder Representative Serv. v. Airbus Americas, Inc.*, 292 Va. 682, 690 (2016)). In addition, the Supreme Court has previously held that "trial courts have the authority to interpret their own orders." *Fredericksburg Constr. Co. v. J.W. Wyne Excavating, Inc.*, 260 Va. 137, 144 (2000) (citing *Rusty's Welding Serv., Inc. v. Gibson*, 29 Va. App. 119, 129 (1999)). Furthermore, when construing a trial court's order, we "defer to the trial court's interpretation of its own order." *Leitao v. Commonwealth*, 39 Va. App. 435, 438 (2002). "That interpretation, however, must be reasonable, and we will 'apply an abuse of discretion standard.'" *Bajgain v. Bajgain*, 64 Va. App. 439, 453 (2015) (quoting *Roe v. Commonwealth*, 271 Va. 453, 458 (2006)).

Here, the circuit court reasonably concluded that the 2016 QDRO intended for the parties to share retirement income. The circuit court's interpretation is supported by express language in both the divorce decree and the 2016 QDRO. The divorce decree awarded wife "one half of the marital share of both [husband's] police pension fund and defined benefit plan." The 2016 QDRO provided that "50% of the marital share of the member's retirement benefits and allowances to be paid by Fairfax County Police Officers Retirement System ("the System"), is assigned to the alternate payee [wife]."

Moreover, evidence presented to the circuit court indicated that the DROP benefits derived from the overall pension, and thus that they were normal retirement benefits subject to the 2016 QDRO. For example, wife presented a DROP Account Statement to the circuit court, which identified the DROP payment as a "Normal Retirement Benefit." Wife also presented an exhibit entitled "Benefit Payroll History for Richard Perl" from the Fairfax County Retirement

- 5 -

System. This document classified the DROP payments from January to August 2024 as "Service Retirement" benefits.

Moreover, the Fairfax County ordinances that pertain to and authorize DROP treat these funds as normal retirement benefits that directly fund the DROP accounts. *See* Fairfax County, Va., Code § 3-7-52(d)(1) ("the member's service retirement allowance . . . shall be paid into the member's DROP account"); Fairfax County, Va., Code § 3-7-52(e)(1) ("At the conclusion of a participating DROP member's DROP period, . . . [t]he participating DROP member shall then begin to receive normal service retirement allowances.").

Finally, the term "DROP" itself—which both parties agree is an acronym that stands for "Deferred Retirement Option Program"—is particularly persuasive. The use of the word "Retirement" in the acronym thus also leads to the seemingly obvious conclusion that a DROP benefit is a *retirement* benefit. The DROP funds were clearly part of husband's regular retirement benefits that the circuit court intended to distribute in the divorce decree and in the 2016 QDRO.

Given that the DROP benefits are *retirement* benefits, the circuit court did not add to or enhance the 2016 QDRO by clarifying that the distribution of retirement benefits in the 2016 QDRO included the DROP funds. Rather, clarification was appropriate under Code § 20-107.3(K)(4), which explicitly authorized the circuit court to modify the QDRO in order to revise or confirm its terms to effectuate the intent of the QDRO. Code § 20-107.3(K) provides:

> The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to:
>
> . . .
>
> (4) Modify any order entered in a case filed on or after July 1, 1982, intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits . . . only for the purpose of establishing or maintaining the order as a qualified

domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

It was therefore not an abuse of discretion for the circuit court to interpret the 2016 QDRO to include retirement benefits like the DROP program and to modify the QDRO to "effectuate the expressed intent" of the 2016 QDRO, as it was authorized to do so by Code § 20-107.3(K)(4). Therefore, the circuit court effectuated the intent of the 2016 QDRO without substantively modifying its terms by entering the modified QDRO, as Virginia law expressly authorized it to do.[4]

## II. Husband's Tax Payment

In his second assignment of error, husband argues that the circuit court "abused its discretion in ordering that [husband] pay the sum of $37,532.26 as and for the Deferred Retirement Option Program (DROP), which represents a pre-tax distribution when [husband] had already paid taxes on this amount when received."

A trial court's equitable distribution decisions are reviewed for abuse of discretion and "can be overturned only by a showing of an abuse of that discretion." *Smith v. Smith*, 43 Va. App. 279, 286 (2004). "The burden is on the parties to provide the trial court sufficient evidence from which it can value their property." *Bosserman v. Bosserman*, 9 Va. App. 1, 5 (1989) (quoting *Taylor v. Taylor*, 5 Va. App. 436, 443 (1988)). "[A]ppellate courts 'cannot continue to reverse and remand' equitable distribution cases 'where the parties have had an

---

[4] Husband argues on appeal that the trial court erred by construing Code § 20-107.3(K) to give it "the unlimited power to insert a benefit not contemplated during trial . . . in violation of Rule 1:1." (Capitalization removed). The Supreme Court has stated, "after the 21-day period [of Rule 1:1] elapses, courts have no authority to disturb their prior rulings, unless the General Assembly has created a statutory exception to the policy of finality implemented by Rule 1:1. *Code § 20-107.3(K)(4) is such an exception*." *Jackson v. Jackson*, 298 Va. 132, 146 (2019) (emphasis added) (internal citation omitted). We find that the circuit court did not violate Rule 1:1 when it acted pursuant to a statutory exception created by the General Assembly.

adequate opportunity to introduce evidence but have failed to do so.'" *Hamad v. Hamad*, 61 Va. App. 593, 609 (2013) (quoting *Bowers v. Bowers*, 4 Va. App. 610, 617 (1987)).

In this case, husband introduced no evidence of a final tax payment upon which the trial court could reasonably base a decision to deduct such a payment from what husband owed wife in DROP benefits. Without reliable evidence in the record of the exact amount husband paid in taxes, the circuit court did not err in declining to speculate by deducting taxes at husband's tax rate. The trial judge, without sufficient information to deduct a precise amount paid in tax, suggested that husband could file an amended return and get an income tax refund for the significant reduction in his own income. Although the record contained some evidence suggesting a tax payment, there were no final numbers entered in evidence. Husband even conceded that he had not yet filed his taxes. In addition, one exhibit stated that "actual taxes have not yet been filed"—and that husband did "not know his bracket for this year." Although husband submitted a proposed order which purported to actually include taxes paid in 2024, the proposed order was unsupported by evidence in the actual record. Thus, the circuit court did not abuse its discretion by concluding that it lacked sufficient evidence to deduct a specific amount of taxes from the amount of DROP benefits due to wife.[5]

### III. Attorney Fees and Interest

In his third assignment of error, husband argues that the circuit court "abused its discretion when it ordered a payment of attorneys fees." Likewise, in her cross-assignments of

---

[5] Code § 20-107.3(E)(9) requires circuit courts, in making equitable distribution awards, to distribute marital property "after consideration of . . . [t]he tax consequences to each party." This Court has no reason to believe that the circuit court did not consider the "tax consequences to each party" or properly weigh the tax consequences to husband when it decided to modify the QDRO to award wife this portion of the DROP funds. After all, a circuit court "judge is presumed to know the law and to apply it correctly in each case." *Blankenship v. Commonwealth*, 69 Va. App. 692, 702 (2019) (quoting *Groves v. Commonwealth*, 50 Va. App. 57, 62 (2007)).

error, wife argues that the trial court erred by "denying [wife's] request for the entirety of her attorney's fees" and by "denying [wife's] request for interest."

In divorce cases, "[c]osts may be awarded to either party as equity and justice may require." Code § 20-99(6). "An award of attorney's fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion." *Graves v. Graves*, 4 Va. App. 326, 333 (1987) (citing *Ingram v. Ingram*, 217 Va. 27, 29 (1976)).

Code § 8.01-382 states that a circuit court, in a final order, "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." "This section provides for the *discretionary* award of prejudgment interest by the trier of fact, who 'may provide for' such interest and fix the time of its commencement." *Dairyland Ins. Co. v. Douthat*, 248 Va. 627, 631 (1994) (emphasis in original) (quoting Code § 8.01-382). We review the discretionary award of pre-judgment interest, like an award of attorney fees, for abuse of discretion. *See Reid v. Ayscue*, 246 Va. 454, 459 (1993).

In its August 8, 2024 letter opinion, the circuit court awarded wife $8,000 in attorney fees that she incurred while this matter was in the circuit court, but declined to award interest. The circuit court reasoned that this litigation had been "protracted and overly contentious" and that "each party took a position that was inflexible and rigid." The circuit court reiterated this sentiment in its October 28, 2024 order, in which the court stated:

> [T]he Court finds that this litigation continues to be overly contentious. The Court is of the opinion that had this been litigated by other attorneys, the matter would likely have settled and not been protracted nor as vexatious as it has been.

In addition, wife had to pursue extra steps in order to obtain the retirement share to which she was already entitled. This fact in itself clearly supports the circuit court's award of attorney fees to wife. We find no abuse of discretion in the circuit court's decision to award $8,000 in attorney fees (without interest) that were incurred in the trial court.

- 9 -

At the same time, the "question of attorney fees on appeal is committed to our discretion based upon our consideration of all of the pertinent facts and circumstances." *Sobol v. Sobol*, 74 Va. App. 252, 290 (2022). Rule 5A:30 permits this Court to award appellate attorney fees after considering "all the equities of the case." Rule 5A:30(b)(2)(C). Exercising our discretion and considering all of the equities of the case, we conclude that an award of reasonable appellate attorney fees and costs to wife is justified. We therefore remand the case to the circuit court for it to make an assessment of reasonable attorney fees and costs incurred by wife on appeal and then to make that award to wife.

CONCLUSION

For all of the foregoing reasons, we do not disturb the circuit court's judgment.

*Affirmed and remanded.*